## BROWNELL IMPROVEMENT COMPANY ET AL. *v.* NIXON ET AL.

[No. 7,391. Filed October 14, 1910. Rehearing denied June 28, 1911.]

1. LIENS.—*Superiority.—Common Law.—Statute.*—At the common law the superiority of liens was fixed by the time of their attaching, but a different rule may be fixed by statute. p. 199.

2. MUNICIPAL CORPORATIONS.— *Street-Improvement Liens.— Priority.—Statutes.*—Under §3623f Burns 1901, Acts 1901 p. 534, §6, providing that street-improvement "assessments, as made, shall be a lien upon the several lots, tracts of land and parcels of ground to the same extent that taxes are a lien upon such property, and shall be collectible in the same way that taxes are collected," the liens of two or more street-improvement assessments are equal, though such improvements are made at different times. pp. 199, 200, 201, 210.

3. STATUTES.—*Words.—Construction.*—The words used in a statute should be given their ordinary meaning, unless it clearly appears that a different meaning was intended. p. 200.

4. MUNICIPAL CORPORATIONS. — *Taxation. — "Taxes." — "Assessments."—Statutes.*—The words "taxes" and "assessments" as

used in §3623f Burns 1901, Acts 1901 p. 534, §6, providing that "the assessments [for street improvements] * * * shall be a lien upon the several lots, * * * to the same extent that taxes are a lien upon such property," import, respectively, a charge levied upon the person or property for the support of the government, and a special imposition placed upon property to pay for a public improvement. p. 201.

5. MUNICIPAL CORPORATIONS. — *Street-Improvement Liens.* — *Enforcement.*—*Basis of Suit.*—*Collateral Attack.*—In a suit to foreclose street-improvement liens, the assessments made constitute the basis of the suit; and a defense that the contract for such improvement, and the assessments made, were void, constitutes a collateral attack on the judgment of the council in making them. p. 204.

6. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Assessments.* —*Jurisdiction.*—*Statutes.*—The right of a municipal corporation to assess property for the making of street improvements is statutory; and the statutory method of obtaining jurisdiction to make such assessments is mandatory and must be substantially complied with. p. 204.

7. MUNICIPAL CORPORATIONS.—*Street-Improvement Assessments.*— *Void.*—*Collateral Attack.*—Where a city council, having no jurisdiction thereof, makes assessments for street improvements, its action is void; and if such want of jurisdiction appears upon the face of its proceedings, the validity thereof may be questioned on a collateral attack. p. 205.

8. MUNICIPAL CORPORATIONS.—*Street-Improvement Assessments.*— *Jurisdiction.*—*Notice.*—Where a frontager's name, in a street-improvement proceeding, was omitted from the notice given by the city clerk of the meeting of the city commissioners, as required by §3623c Burns 1901, Acts 1901 p. 534, §3, but notice by publication was given as required by §3623d Burns 1901, Acts 1901 p. 534, §4, setting forth the location and terminal points of the improvement, the date of filing the commissioners' report, and the time of the meeting of the council to consider such assessments, inviting all persons interested to appear, the council had jurisdiction of the matter, and an assessment so confirmed by the council is valid. p. 205.

9. MUNICIPAL CORPORATIONS.—*Street-Improvement Assessments.*— *Jurisdiction of Council.*—The common councils of cities have exclusive original jurisdiction of the subject-matter of street-improvement assessments, and in the exercise thereof they act in an administrative capacity until notice is given, and property owners appear for the final adjustment of assessments, when their action is *quasi-*judicial. p. 206.

10. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Notice to Bidders.*—Under §3623a Burns 1901, Acts 1901 p. 534, §1, pro-

viding that "when the common council of any city * * * desires to make any street * * * improvement, it shall * * * fix a date upon which bids will be received," and "shall give notice of the letting of such contract," the common council cannot, in the absence of notice to the bidders, let a contract for such improvement.   p. 206.

11.   MUNICIPAL CORPORATIONS.—*Street Improvements.—Jurisdiction. —Presumptions.*—Where a common council has jurisdiction to order the making of street improvements, such jurisdiction is presumed to continue, unless, upon the face of the council's proceedings, it appears to have been lost.   p. 207.

12.   MUNICIPAL CORPORATIONS. — *Street Improvements. — Plans.— Notice.—Special Findings.*—In a suit for the foreclosure of a street-improvement lien, special findings that the resolution of the council for the making of such improvement conformed to the statutory requirements (§3623a Burns 1901, Acts 1901 p. 534, §1), that the notice to bidders referred to plans and specifications on file with the city clerk, but failing to show that the plans and specifications referred to in the notice were a part of the resolution, and that the council changed the plans and specifications on file with the clerk after the bids were received, do not show a loss of jurisdiction, since the change of the plans on file with the clerk might have been made to conform to the resolution of the council.   p. 207.

13.   MUNICIPAL CORPORATIONS.—*Street Improvements.—Notice.—Estoppel.*—Where some notice of a street improvement is given and the council holds it sufficient, frontagers who know of the street improvement and who stand by without objection until the work is completed are estopped to question the validity of the notice or the jurisdiction of the council to order such improvement. p. 208.

14.   MUNICIPAL CORPORATIONS.—*Street-Improvement Liens.—Equity.* —Suits to foreclose street-improvement liens are of equitable cognizance.   pp. 208, 210.

15.   MUNICIPAL CORPORATIONS.—*Street Improvements.—Notice.— Estoppel.—Special Findings.*—While it is true that a subsequent purchaser of a lot assessed for street improvements who knew of the making of such improvements would not be estopped to contest the validity of the notice of the improvements where the owner did not know of the making of such improvements, yet where the special findings show that the owner was present when the council awarded the contract for the improvements, and that three times a week he visited his daughter, who lived on the street where the improvements were being made, notice is sufficiently shown.   p. 211.

From Fountain Circuit Court; *I. E. Schoonover,* Judge.

Suit by the Brownell Improvement Company and another against Mary F. Nixon and others. From a judgment for defendants, plaintiffs appeal. *Reversed.*

*Clodfelter & Hester,* for appellants.

*Lucas Nebeker, Courtney W. Dice, A. T. Livengood* and *Fred S. Purnell,* for appellees.

MYERS, J.—This was a suit by appellants to foreclose certain street-improvement liens, and is based on assessments made and confirmed by the common council of the city of Veedersburg. Said council in making said improvement and assessments proceeded under an act of the General Assembly, approved March 11, 1901 (Acts 1901 p. 534, §§3623a-3623h Burns 1901). Said improvement consisted of grading a certain designated portion of Mill street, in the city of Veedersburg. The contract for said improvement was let by said council on September 26, 1901, to J. H. Palmer,. who completed the improvement about July 2, 1902. Thereafter bonds were issued, aggregating $11,670, the total cost and contract price of said work, and delivered to said Palmer, who thereafter in writing assigned them to appellants; that thereafter, as shown by the answer of the appellees Edward Patton, Henry Martin, John A. Foster, and the Wabash Clay Company, said council, acting under said act of 1901, on August 15, 1904, contracted with the firm of Patton & Martin further to improve said portion of Mill street, by grading and surfacing the roadway with brick, and by constructing concrete sidewalks and curbs along said roadway; that said firm entered upon said contract, and completed the work according to the plans and specifications at the contract price of $18,439.65; that said council accepted said work, and thereafter such proceedings were had that assessments were made against the property abutting said improvement, aggregating said contract price, and bonds were duly issued by said city as provided in said act, and were delivered to said firm in payment of the cost of said improvement.

Among the questions fairly presented by the record in this case is that of priority of liens on the same property, growing out of two improvements of the same street under the same law, one at a later date than the other.

At common law, priority of liens, as a rule, was fixed by the time the liens attached to the subject-matter; but as to statutory liens, a different rule as to priority may be fixed by the statute creating them. We are now considering statutory liens. Both improvements were made under the same legislative enactment. Section six of the act of 1901, *supra* (§3623f Burns 1901), provides that "assessments, as made, together with the interest thereon, shall be a lien upon the several lots, tracts of land and parcels of ground to the same extent that taxes are a lien upon such property, and shall be collectible in ten equal annual instalments in the same way that taxes are collected." The assessments in question were declared by statute to be a lien on the property assessed, "to the same extent as taxes are a lien." By this statute the legislature fixed the extent and rank of the lien, and provided that such assessments should be collected by the same process and agencies used in collecting taxes, and "that delinquent instalments shall be collected in the same manner that delinquent taxes are collected," or they may be collected in a foreclosure proceeding in any court of competent jurisdiction as a mortgage is foreclosed.

Said appellees insist that the liens occasioned by the last improvement are superior to those of the first improvement, and cite, in support of their contention, the case of *Burke* v. *Lukens* (1895), 12 Ind. App. 648, where it is held that the last shall be first and the first shall be last in the order of priority. The statute authorizing the assessments in that case (Acts 1889 p. 237, §3, §4290 Burns 1901) provided that assessments for street improvements, and the interest accruing thereon, "shall be a lien upon the property so assessed and shall remain a lien until fully paid,

and shall have precedence over all other liens, excepting taxes.''

The act under which the improvements in this case were made, expressly repeals all laws and parts of laws in conflict therewith, and especially the act of 1889, *supra,* so far as the provisions therein applied to cities not operating under special charters. The city of Veedersburg was not operating under a special charter; so that in this case we are to deal with the clause ''to the same extent as taxes are a lien,'' instead of the clause ''and shall have precedence over all other liens, excepting taxes,'' which was before this court in the case of *Burke* v. *Lukens, supra.* In that case it is said that ''a strict construction of the wording of the statute fully warrants appellant's assumption that the last lien of this kind acquired must have precedence over all other liens of a like character. The theory of the law is that every improvement of this character to the extent of the improvement enhances the value of the property.''

The wording of the statute is not ambiguous nor uncertain. Its language is not open to construction, and, under all rules for the interpretation of statutes, the words 3. used are to be given their usual and ordinary meaning, unless it clearly appears that some other meaning was intended. *Townsend* v. *Meneley* (1906), 37 Ind. App. 127; *Starr* v. *Board, etc.* (1907), 40 Ind. App. 7; *Truelove* v. *City of Washington* (1907), 169 Ind. 291; *State* v. *Shelton* (1906), 38 Ind. App. 80.

To say that the clause, ''to the same extent as taxes are a lien,'' clearly indicates a legislative intention to give later street-improvement assessment liens priority over 2. earlier like assessment liens not extinguished by a sale of the property, would require us to read into the statute words that seem to us were advisedly omitted by the General Assembly.

This court in the case of *Burke* v. *Lukens, supra,* on the theory that every improvement of streets, to the extent of

MAY TERM, 1911. 201

Brownell Improv. Co. *v.* Nixon—48 Ind. App. 195.

the assessments therefor, enhances the value of the property assessed, read into the statute the words "of a like character." Upon a careful reëxamination of that statute, we conclude that the reason given for the added words will not justify such a material addition.

The word "taxes" is well understood as a charge levied upon the person or property for the purpose of raising a general revenue for the support of the government, and is a charge to which an individual claim on property must be deferred; while the word "assessments," as used in the statute under consideration, is generally understood as a local or special imposition placed upon property to pay for a public improvement, on the theory that such property thereby derives a special benefit. *Palmer* v. *Stumph* (1868), 29 Ind. 329.

The statute in question refers to street-improvement liens as a class, and, in effect, provides that such liens shall rank in extent or degree second only to that for taxes. It is silent on the question of priority as between holders of such liens. It is general, making such assessments due in equal annual instalments, and collectible by the same procedure and through the same agencies as taxes are collected. Such assessments are placed on the tax duplicate and charged against the several lots, tracts of land and parcels of ground, and in case of nonpayment when due are subject to the same penalties as delinquent taxes, and are collected in the same manner that delinquent taxes are collected. No one would claim that in the sale of property to satisfy delinquent taxes, the taxes for any one year have precedence over the taxes for any subsequent or former year. Had the city paid for both improvements and had it been necessary for the city to sell the property assessed in order to recover the money paid, there would be no question of priority.

While this is a case between individuals holding statutory liens of equal degree, yet, in the application of the rule as

to priority of liens, we can see no reason for adopting a rule different from that which would apply in case the city had paid for the improvement, and was seeking to enforce the liens in its favor.  It is only fair to say that the property benefited is charged with the aggregate of all such assessments, and the law looks to their payment, not because any particular person is entitled to it, nor because of any particular assessment for any particular improvement. The reason for the rule denying priority in such cases is, that the property was assessed upon the theory of benefits, and that every improvement of this character enhances the value of the property to the extent of such assessment. From this conclusion, it follows that the property mentioned in this case was increased in value to the extent of the assessment for both improvements, and the security for the payment of liens growing out of one was augmented by the other.   The conclusion reached is not unfair to the party making the last improvement, as he was charged with notice of the first improvement liens outstanding (*City of Elkhart* v. *Wickwire* [1889], 121 Ind. 331), and ought not to be placed in a better position than he would have been had the first improvement not been made.

' The question on the action of the court in overruling the demurrers to the answer of Jerome B. Dunkle and others, and the separate answer of Mary F. Nixon, is presented by the special findings of fact with the conclusions of law thereon, and exceptions reserved by appellants.

The conclusions of law were to the effect that the assessments upon certain described properties belonging to appellees Jerome B. Dunkle and Mary F. Nixon were void, and were not liens upon the respective parcels of land assessed, and that appellants were not entitled to a foreclosure or other relief against said properties.

The findings show that the city of Veedersburg, under an act approved March 11, 1901 (Acts 1901 p. 534, §§3623a-3623h Burns 1901), by its common council, on August 20,

1901, passed a declaratory resolution, and took such other steps as were required under said act, for the improvement of Mill street, by grading it between certain designated points thereon. Proceedings were had and notice to bidders was given fixing September 23, 1901, as the time, and the office of the clerk as the place, for receiving bids for the making of said improvement. At the time and place fixed for receiving bids, the council met, and four bidders submitted bids for doing the work set forth in the plans and specifications then on file with the city clerk. The council opened and read all bids, and took them under advisement until September 26, 1901, to which date said meeting of September 23 was adjourned; that before said adjournment said council went into secret session, and decided to, and did, modify and change said plans and specifications, by excluding the work of excavating for sidewalks; that J. H. Palmer bid $12,995, which was the lowest bid received for doing the work required under the plans and specifications before they were modified; that on September 26, pursuant to adjournment, the council met, and without further advertisement or notice of the letting of said work, received and accepted a bid of $11,670 from said Palmer for the work required by the plans and specifications so revised and changed, and on this bid he was awarded the contract; that at said adjourned meeting, and while the council had said bids under consideration, Samuel Cade, Margaret Dunkle, Mary F. Nixon, and other property owners affected by said improvement, were present, and filed written objections to the acceptance of any of said bids, for the reason that they were too high, and that said street should be improved as a unit. No other objections were made by said remonstrators. The contract entered into between said city and said Palmer was in all other respects in due form of law, and Palmer made said improvements, and fully complied with all the terms of said contract. Thereafter such proceedings were had by said council, in-

204    APPELLATE COURT OF INDIANA,

Brownell Improv. Co. *v.* Nixon—48 Ind. App. 195.

cluding an opportunity for a hearing by all persons interested regarding the assessment of their property for the payment of the improvement so made, and on September 5, 1902, said council made, adopted and confirmed the assessments in suit against the several lots, tracts and parcels of land benefited by said improvement; that among the several lots, tracts and parcels of land benefited by said improvement were certain tracts or parcels of land belonging to Samuel Cade, Margaret Dunkle and Mary F. Nixon; that appellee Nixon later became the owner of said parcels of land owned by Samuel Cade, and Jerome B. Dunkle thereafter became the owner of the lots so assessed while owned by Margaret Dunkle.

Appellees Nixon and Dunkle first insist that the Palmer contract for the improvement of Mill street was void, and that the assessments on their property to pay the cost of such improvement were also void, for the reason that after the plans and specifications were changed no notice was given inviting proposals for doing the work, and that the council did not acquire jurisdiction over the subject-matter and of the person.

5. The assessments were the basis of this suit (*Lewis* v. *Albertson* [1899], 23 Ind. App. 147), and the defense is a collateral attack on the judgment of the council making them (*Zorn* v. *Warren-Scharf, etc., Pav. Co.* [1908], 42 Ind. App. 213).

6. Municipalities are by statute authorized to burden private property with the cost of street improvements, but their authority so to do depends upon a compliance with the statute through which they derive such power. The application of this power necessarily affects individual rights, and in such cases the manner of obtaining jurisdiction being by statute prescribed, and intended for the protection of the property owner, is mandatory, and must be substantially pursued. *Brown* v. *Central Bermudez Co.* (1904), 162 Ind. 452; *Garrigus* v. *Board, etc.* (1872),

39 Ind. 66; *McCormack* v. *Terre Haute, etc., R. Co.* (1857), 9 Ind. 283; *City of Madison* v. *Smith* (1882), 83 Ind. 502.

The question being one challenging the power of the common council to make the assessments, we look to the proceedings had by that body to determine whether each

7. step essentially jurisdictional was taken. For if the council has failed to comply with some mandatory provision of the statute amounting to a condition precedent to its power to make the assessment in question, and it so appears upon the face of its proceedings, this question may be raised by a collateral attack. *Edwards* v. *Cooper* (1907), 168 Ind. 54; *Hibben* v. *Smith* (1902), 158 Ind. 206; *Brown* v. *Central Bermudez Co., supra; Zorn* v. *Warren-Scharf, etc., Pav. Co., supra.* ·

It is claimed, and the findings show, that the name of Cade did not appear in the notice given by the city clerk of the meeting of the city commissioners, as a person

8. whose property had been reported as benefited or damaged by said improvement, as provided in §3 of the act of 1901, *supra* (§3623c Burns 1901), and for this reason it is argued that the council failed to obtain jurisdiction over the person of Cade. We cannot agree with this contention, for the reason that the purpose of a notice is to give all persons affected an opportunity for a day in court, before final action on the assessments. The findings show that notice by publication was given, as provided in §4 of the act of 1901, *supra* (§3623d Burns 1901), setting forth the location and terminal points of such improvement, the date of filing the commissioner's report, and reciting the time and place at which council would meet for the purpose of confirming or modifying the assessments made by the commissioners,. and inviting all persons interested to appear. The assessment roll, as reported to the council, contained the name of Cade and a description of his property which was proposed to be assessed. The report of the commissioners being advisory, only, the whole question of

206          APPELLATE COURT OF INDIANA,

Brownell Improv. Co. *v.* Nixon—48 Ind. App. 195.

benefits and the assessments was open for consideration by the council. It cannot be said that there was no notice, nor that there was no attempt to follow the statute. This being true, under the decided cases in this State we are compelled to hold that the omission of the name of Cade in the particular notice mentioned can amount to no more than an irregularity, and that the last notice was sufficient to give the council jurisdiction of the person of each landowner. *Brown* v. *Central Bermudez Co., supra; Voris* v. *Pittsburg Plate Glass Co.* (1904), 163 Ind. 599; *Barber Asphalt Pav. Co.* v. *Edgerton* (1890), 125 Ind. 455; *Garvin* v. *Daussman* (1888), 114 Ind. 429; *Leeds* v. *Defrees* (1901), 157 Ind. 392; *Pittsburgh, etc., R. Co.* v. *Taber* (1907), 168 Ind. 419; *Hughes* v. *Parker* (1897), 148 Ind. 692.

Having determined that the council had jurisdiction of the person, we now inquire as to whether it had jurisdiction over the subject-matter. It must be kept in mind that the common council of the city of Veedersburg had exclusive original jurisdiction respecting street improvements, and in the exercise of that authority acted in a business or administrative character until notice was given and the property owners brought in for the final adjustment of the assessments reported by the city commissioners, then it exercised what has been termed a *quasi*-judicial power. *Shank* v. *Smith* (1901), 157 Ind. 401, 55 L. R. A. 564.

The asserted jurisdictional defect is the absence of notice inviting proposals for the work. The findings show that the common council gave notice to bidders, and fixed September 23 as the time, and the office of the city clerk as the place, for receiving bids. At the time and place aforesaid the common council met, and four bidders, and no more, submitted bids upon plans and specifications then on file with the city clerk. The facts show that a notice was given, as required by law, but it is found that the plans and specifications were changed after the

bids were received, and that no notice was given for bids for the work designated in the plans and specifications as changed, and for that reason the whole proceedings were declared void.

Section one of the act of 1901, *supra* (§3623a Burns 1901), under which the improvement was made, provides that "when the common council of any city, not operating under a special charter, desires to make any street, alley or sewer improvement, it shall order the same by the adoption of a resolution declaring such improvement to be necessary and stating the kind, size, location and terminal points thereof and fixing a date upon which bids will be received for the construction of said improvement." It is true, as claimed by counsel, that the notice to bidders required by this section is a provision for the benefit of the property owners, and a condition precedent to the right of the common council to let the contract. *Ross* v. *Stackhouse* (1888), 114 Ind. 200; *Zorn* v. *Warren-Scharf, etc., Pav. Co., supra.* As said in the case of *Ross* v. *Stackhouse, supra:* "Where it affirmatively appears that the jurisdictional steps have been taken, upon which the power of the common council to contract depends, a contractor may rely upon the record, even though the jurisdictional facts may appear imperfect and irregular. After he has entered upon the work and expended money and labor for the benefit of the property owner, the latter will not be permitted to impair or break down the jurisdiction upon which the contractor may have relied, by bringing forward merely incidental matters, or by proof of extraneous facts, unless fraud or collusion be shown."

At this point it may be well to state that no fraud or bad faith on the part of any one respecting any of the proceedings is found or claimed. The admitted notice was clearly sufficient, in that respect, to give the council jurisdiction, and once acquired it will be presumed to continue, unless, upon the face of proceedings of that

208    APPELLATE COURT OF INDIANA,

Brownell Improv. Co. *v.* Nixon—48 Ind. App. 195.

body, it appears to have been lost. It will be observed that the statute under which this improvement was made does not require plans and specifications, other than as stated in the declaratory resolution. The resolution in this case conformed to the statute, by stating the kind, size, location and terminal points of the proposed improvement. The notice to bidders referred to plans and specifications on file with the city clerk for a description of the work to be let. It is not found, as a fact, that the plans and specifications referred to in the notice were a part of the declaratory resolution, and we are not at liberty to aid a special finding by any inference or intendment. *Hill* v. *Swihart* (1897), 148 Ind. 319; *Green* v. *McGrew* (1905), 35 Ind. App. 104, 111 Am. St. 149. The work to be let and the basis for bidding were designated in the declaratory resolution. Plans and specifications on file with the city clerk, not in accord with the kind, size, location and terminal points of the improvement declared to be necessary, are not controlling, and do not furnish a proper basis for bidding. The resolution was adopted, and a certain designated improvement declared to be necessary by a vote of at least two-thirds of the members of the common council. The findings show that the common council, while in secret session, changed the plans and specifications, but there is no finding that the improvement described in the original resolution was in any manner changed. If the bidders were deceived by the notice, and bid on work not contemplated by the declaratory resolution, this fact alone would not necessarily render the proceedings of the common council void for want of jurisdiction.

In addition to the foregoing statement of facts, the findings show that from the time Palmer began said work, and from day to day until it was completed, he employed about the work from eight to ten teams and a large number of men, and expended a large sum of money and much time in making said improvement; that during

all the time said work was being done, appellees Nixon and Dunkle knew that said contractor was making said improvement, and was expending large sums of money in doing said work, and at no time did they object to the contractor's doing his work. In view of these facts, another principle of law, announced by the court in the case of *Ross* v. *Stackhouse, supra,* is especially applicable. In that case it is said: "Regardless of the statute, however, it must be considered as settled by the decisions, and upon established principles, that where it appears, in a proceeding of this character, that an attempt was made to give notice, and that some notice was given, which the body charged with the duty of acting adjudged to be sufficient, a party whose property is to be benefited by the improvement cannot quietly stand by and receive the benefit and then question the regularity of the proceedings."

The parties who now challenge the validity of the Palmer contract were before the council at the time the bids were considered and the contract was let. One of the objections urged by them against the letting of the contract was that the bids were too high. Palmer reduced his bid, and it does not appear that any objection was offered by either of the parties to this last bid. There was no claim as to the invalidity of the proceedings or that the bid was too high, or that the improvement contracted for was different from that called for by the original resolution. We cannot say from the findings that the proceedings of the common council, upon their face, show an entire omission of any statutory step essentially jurisdictional, or that the jurisdiction acquired by that body was thereafter lost.

Other questions are presented, but we shall not consider them, as the judgment, for the reasons stated, must be reversed. We believe that justice will be best subserved by granting a new trial. It is therefore ordered that the judgment be reversed, and that appellant be granted a new trial.

Rabb, J., did not participate.

## ON PETITION FOR REHEARING.

MYERS, J.—On petition for a rehearing, appellees seem to think that our opinion on the question of priority of liens should state whether it is based on the facts averred in the answer of Patton and others, second improvement lienholders, or upon the facts as found by the court. At our former consideration of this case we took the facts in the answer as admitted. The complaint contained the usual allegations of fact in such cases. It alleged that these defendants held liens against said real estate inferior to the liens of plaintiffs, and called upon the defendants to answer as to any interest or liens claimed by them against the real estate described in the complaint. The answer brought before the court all of the proceedings of the second improvement, beginning with the declaratory resolution passed by the common council, and each step thereafter, including the issue of the bonds to the contractors, and their subsequent assignment to these defendants, whereby they claimed to hold liens superior to the liens of the first improvement. Conceding that appellants, by their action in withdrawing their reply to the answer, admitted all the facts averred in said answer, such action would not authorize the court to measure such facts by any other rule of law than that applicable to facts pleaded as a defense to plaintiff's claim of superiority. Facts confessed can have no more force than facts established in any other manner. If they failed to show superiority, and instead showed liens of equal rank with those sought to be enforced, then the court should have made such order in the premises as the facts under the law authorized. The case was one of equitable cognizance, and as such the court was not without authority to make such order in the premises as justice and right between the parties seemed to warrant.

Again it is insisted that a part of the property now owned

by Nixon was, at the time the improvement was made, owned by Samuel Cade, and although Mrs. Nixon may have known that the improvement was being made, her knowledge would have no binding force on the then owner of the property. This is all true, and while it must be admitted that the court did not find in so many ·words that Cade knew the work was being done, yet it was found that he was present at the time the common council awarded the contract to Palmer, that Mrs. Nixon, his daughter, resided on a lot belonging to Cade, which abutted on the improved portion of the street, at the time the improvement was being made, and that, while a large number of men and teams were at work making said improvement, he visited his daughter from one to three times a week. From such facts but one conclusion must follow, and that is, that Cade knew the improvement was being made. It is found as a fact that he at no time notified the contractor that he objected to the making of the improvement, or that he would contest any assessment made against him on account thereof, or that the contract was illegal; nor does it appear that he at any time challenged the validity of the proceedings in the common council. At our former consideration of this case, we concluded that the common council had jurisdiction of the person of Cade at the time the assessments sued on were made.

Counsel, in support of their petition for a rehearing, have discussed other questions, which were considered and decided at the former hearing of this case, and with the decision of those questions we are still satisfied.

The petition for a rehearing is overruled.