[No. 19331. *En Banc.* November 19, 1925.]

## F. H. HOLLENBECK, *Appellant,* v. THE CITY OF SEATTLE et al., *Respondents.*[1]

MUNICIPAL CORPORATIONS (284)—PUBLIC IMPROVEMENTS—ASSESS-MENTS—LIEN AND PRIORITY. Local assessments levied upon property benefited do not take priority in the inverse order of their levy, under the rule applicable to general taxes, for the reason that the necessity of subsequent levies to raise current expenditures for the support of the government is absent, and because the first levy is attended with a corresponding benefit upon the credit of the property benefited (overruling *Seattle v. Everett*, 125 Wash. 39).

SAME (284). There is no priority between local assessments upon the property benefited, but the funds applicable to their payment must be pro-rated, in view of Rem. Comp. Stat., § 9372; providing that the lien, from the time the assessment roll is placed in the hands of the officer, "shall be paramount and superior to any other lien . . . theretofore or thereafter created except a lien for assessments for general taxes;" § 9384, providing that, on resales after a city foreclosure, the purchaser gets title subject to assessments that are not delinquent; § 9385, requiring the purchaser, if no redemption is made, to pay all delinquent taxes and assessments, whether prior or subsequent, before being entitled to a deed, and making the title subject to all assessments not delinquent; and also § 9388, providing that the prior foreclosure shall not bar a foreclosure thereafter for future installments (MACKINTOSH and MITCHELL, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Hon. Charles E. Claypool, judge *pro tempore,* entered April 14, 1925, dismissing an action for an injunction, upon sustaining a demurrer to the complaint. Affirmed.

[1]Reported in 240 Pac. 916.

*Louis E. Shela,* for appellant.

*Thomas J. L. Kennedy, Ray Dumett, J. A. Newton,* and *A. C. Van Solen,* for respondents.

*Preston, Thorgrimson & Turner, amici curiae.*

TOLMAN, C. J.—Appellant, as plaintiff, brought this action to enjoin what was alleged to be an unauthorized and unlawful disposition of certain funds by the respondent city and its officers. A demurrer was sustained to the amended complaint, plaintiff elected to stand on his complaint, his action was dismissed, and this appeal followed.

The complaint, by proper averments, shows that appellant is the holder of local improvement bond No. 84, for the sum of two hundred dollars issued by the city of Seattle against local improvement district No. 3446, which bond is payable solely from the proceeds of assessments made upon the property benefited by the improvement. A certain lot in that particular local improvement district was subject to six several and separate local assessments, no part of any one of which, either principal or interest, has ever been paid. The assessment of local improvement district No. 3446 securing appellant's bond is the fifth in time of imposition of these six assessments. King county caused this lot to be sold for general taxes, acquired title to the lot by purchase at such sale, and thereafter sold the lot in the manner provided by law, receiving all of the amounts due it, including the general taxes, costs of sale, penalties and interest, and the sum of $135.53 in excess of these amounts. This sum, under Rem. Comp. Stat., § 9393, was, in the language of the statute, "paid to the city to discharge all local assessment liens upon such property."

The city and its officers claim that the money so received should be distributed ratably in proportion

to the amount of the assessments levied in the several districts on the said lot, and threaten to so proceed; while the appellant pleads that there is a deficiency in the local improvement fund for district No. 3446, and his bond cannot be paid in full unless the whole of the assessment as levied against the lot which has been sold, is paid into the local improvement fund No. 3446, and that the money now in the treasurer's hands, if applied to the assessments in inverse order, will pay the whole of the assessment for district No. 3446; while, if the money is distributed ratably, not more than thirty-five per cent of the assessment for that lot in local improvement district No. 3446 will be paid, and consequently appellant's bond will not be paid in full.

There are but two contentions presented here: that of the appellant that local assessments, like general taxes, rank in inverse order to the date of their levy; while the respondent and *Amici Curiae* strenuously contend that the well-established inverse-order rule, which is applicable to general taxes, does not and should not apply to special assessments; but that special assessments should, where the fund for payment is insufficient to pay all, prorate, the first in time being on a parity with the last.

The first question to be answered is whether or not the inverse-order rule is to be applied to local assessments. Appellant contends that we have already adopted that rule, as announced in *Seattle v. Everett*, 125 Wash. 39, 215 Pac. 337. It was there said:

"We next inquire as to the standing of the liens evidenced by the local assessment delinquent sales certificates held by Everett. These, we assume, were issued upon sales made by the city treasurer in pursuance of Rem. Comp. Stat., §§ 9377 and 9379 (P. C. §§ 1013, 1015), looking to the ultimate issuing of a deed

thereon by the city treasurer as contemplated by Rem. Comp. Stat., § 9385 (P. C. § 1021). Putting aside for the moment the possibility that the city's lien rights are superior to those of Everett, at all events, because of the required conditions precedent to the exercise of Everett's lien rights, prescribed by the provisions of Rem. Comp. Stat., § 9385 (P. C. § 1021), we think their relative rank may in this case be determined by the relative time of their creation. This court has many times held that the levying of local assessments of this nature is the exercise of the state's sovereign power of taxation (*Seattle v. Hill*, 14 Wash. 487, 45 Pac. 17, 35 L. R. A. 372; *Malette v. Spokane*, 77 Wash. 205, 222, 137 Pac. 496, Ann. Cas. 1915D 225, 51 L. R. A. (N. S.) 686; *Carstens & Earles v. Seattle*, 84 Wash. 88, 96, 146 Pac. 381, Ann. Cas. 1917A 1070; *State ex rel. Case v. Howell*, 85 Wash. 281, 147 Pac. 1162; *Everett v. Adamson*, 106 Wash. 355, 180 Pac. 144) ; and has also adopted the generally prevailing rule that general tax liens are superior in the inverse order to that of other liens as to time; that is, that the last in time, instead of the first in time, is superior. *Whatcom County v. Black*, 90 Wash. 280, 155 Pac. 1071. As to whether or not this rule applies to local assessment liens as between different holders thereof, there seems to be a conflict of authority. Since, however, local assessments are levied in the exercise of the sovereign power of taxation, and under our system are charges wholly *in rem*, as are our general taxes, it is indeed difficult for us to understand why the same rule of priority as to time should not apply to such assessments as is applicable to general taxes, as between different holders of such assessment liens, in the absence of some statutory rule providing otherwise. The question has been learnedly reviewed in the comparatively recent decision of the supreme court of California in *Woodill & Hulse Electric Co. v. Young*, 180 Cal. 667, 182 Pac. 422, 5 A. L. R. 1296, and in the note at page 1301 of the last cited volume, where we think it is well demonstrated that this is the correct view of the law. It seems plain that we do not have any statutory rule of priority which in the least impairs the city's right to successfully

claim superiority of its local assessment liens because they are last in time of creation, whatever may be said as to the changing of that rule by our statutory provisions, as between different private holders of such liens.''

As to this pronouncement, the respondent says:

''As the *Everett* case was presented on behalf of the respondent there by one of counsel for respondent here, we take the liberty of stating that the question of inverse priority of assessment liens was not the fundamental question involved in the *Everett* case, nor was it strongly urged by the parties to that case. The court's ruling in the *Everett* case on this point is *obiter dictum* because unnecessary to its decision therein, and respondents now ask the court to consider this question as a new one.''

Whether or no the point was necessarily decided in the *Everett* case, we feel that the question should be reexamined, because it seems apparent that the reasons for the application of the rule in cases involving general tax liens do not and can not apply to special assessment liens.

The rule of inverse priority is based upon the imperative necessity of collecting revenue for the support of the government. Annual levies are made for the purpose of providing funds for current expenditures, and a failure to collect current revenues might destroy the very government itself. Hence the rule is one of necessity and should not be extended beyond what necessity requires. Moreover, special assessment liens are to be differentiated from general tax liens by the fact that the lien is created upon the theory that a corresponding benefit attaches to the property assessed, and the improvement is constructed upon the sole credit of the property benefited. Either the contractor who performs the work takes the warrants and the

bonds in payment therefor, or, if the security is passed to other investors, still they are purchasing upon the credit of the property specially benefited, and a third interest, that of the bondholder, is injected. Manifestly there is no necessity for applying the inverse-order rule, because governmental funds have not been expended and the moneys to be collected go not to the government but to the private investor. The only investment is that of private parties, made on the faith and credit of the property benefited, and good faith and good morals demand that these investors should have all the security which the statute gives them. As recognized in *Seattle v. Everett, supra,* there is a conflict of authority upon this question. The terms of local statutes are more or less involved in many of the cases; but, without attempting to show just where the weight of authority lies, we, after a careful reconsideration, are impressed with the reasoning of those cases which hold against the inverse-order rule; and under the terms of our statute, as hereinafter set forth, we are impressed with the thought that the legislature intended all special assessments to be on an absolute equality. See *Des Moines Brick Mfg. Co. v. Smith,* 108 Iowa 307, 79 N. W. 77; *Scott-McClure Land Co. v. City of Portland,* 62 Ore. 462, 125 Pac. 276; *Bell v. City of New York,* 66 App. Div. 578, 73 N. Y. Supp. 298; *Brownell Improvement Co. v. Nixon,* 48 Ind. App. 195, 92 N. E. 693, 95 Pac. 585; *Philadelphia v. Meager,* 67 Pa. St. 345; also, the note following *Woodill & Hulse Electric Co. v. Young,* 5 A. L. R. 1296, where all of the authorities, both *pro* and *con,* are collated and discussed. We are now of the opinion that the case of *Seattle v. Everett,* so far as it undertakes to decide the question contrary to the views now expressed, must be, and it is, overruled.

17—136 WASH.

Having decided that the rule of inverse priority does not apply, the next and only remaining question presented is, What rule does apply? The only argument presented is for the *pro rata* rule, and we are left to our own researches and resources as to the applicability of the priority or "first in time, first in right." rule.

It may be admitted that, in the absence of statutory provision to the contrary and speaking generally, liens take precedence in order of time, the first in time being the first in right. Many of the cases which we have cited as authority against the inverse-order rule so hold and the arguments advanced in support of such a rule are engaging, logical, and such as we would be inclined to adopt, were it not for the terms of our statute. The question, as we see it, is one of statutory construction only.

The statute, Rem. Comp. Stat., § 9372 reads:

"The charge on the respective lots, tracts, parcels of land and other property, for the purpose of special assessments to pay the cost and expense, in whole or in part of any improvement authorized in this act, when assessed and the assessment-roll confirmed by the legislative body of such city or town in the manner therein provided by ordinance, shall be a lien upon the property assessed from the time said assessment-roll shall be placed in the hands of the officer authorized by law to collect such assessments. Said lien shall be paramount and superior to any other lien or encumbrance whatsoever, theretofore, or thereafter created except a lien for assessments for general taxes."

On a first reading, one might think this section could be construed in favor of the priority rule. The language creating a lien upon the property assessed from the time the assessment-roll is placed in the hands of the officer authorized to collect favors such a construction, but the sentence immediately following, to the effect that the lien shall be paramount and superior to

any other lien or encumbrance whatsoever, theretofore or thereafter created except a lien for general taxes, negatives the priority rule; since, manifestly, though the first assessment became a lien from the date of the assessment-roll, paramount and superior to all others, yet, likewise, each and all of the assessments subsequent in date, according to the language of the statute, became likewise such paramount and superior liens; and to give effect to the whole section, it would seem that, as between special assessment liens, each is offset by the other, all are paramount and superior to all other liens except general taxes, but none is or can be paramount and superior to any other such special assessment.

This view is strengthened by a consideration of the remainder of the act. If the entire act of 1911 is carefully studied and analyzed it will be seen that, by § 9384, the city, having acquired property at a sale upon a delinquent assessment, cannot resell the same for the amount for which it acquired it with interest and costs, but must, in reselling it, add thereto "all delinquent assessments and taxes that may stand against said property with accrued interest thereon, penalties, costs and other charges." Such delinquent assessments are not classified or given priority one over the other, but all must be included alike, and the city is required to pay into the fund from the proceeds of such resale the amount for which the property was liable. So that the city is denied the right to realize any particular assessment as under a prior lien, but must realize all assessments in the event of such sale. By § 9385 it appears that the purchaser at any such sale, having paid enough to pay all delinquent assessments, still takes the property "subject to the liens of general taxes and special assessments." Therefore it is clear that, upon a resale of the property, a purchaser, having paid

enough to cover the costs of sale, interest and penalties and all delinquent assessments, still gets title from the city subject to the assessments which are not delinquent. Hence the legislature seems to have contemplated equality of right and equality of lien between the several assessments, and no priority to any.

The same legislative intent and policy appears in the provision for redemption of the property by the owner. He must not only pay, in order to redeem, the amount for which the purchaser acquired the property, but all taxes, special assessments, interest, penalties and costs paid by the purchaser. And by a later provision in the latter part of the first paragraph of § 9385, providing that, if no redemption is made, the purchaser is entitled to a deed, it is required that such purchaser, in order to procure a deed, must pay,

". . . all delinquent taxes and special assessments thereon or installments thereof, and certificates of delinquency or other certificates issued for special or local assessments, whether the same were levied, assessed or issued prior or subsequent to the issuance of said certificates of sale."

and, having paid off every delinquent assessment, no matter when levied, and obtained a deed, it is still further provided by the last part of § 9385 that the title acquired by the purchaser is subject to all assessments for local improvements or installments thereof, not delinquent. Nor is there anything in §§ 9386 and 9388, providing for foreclosure by an action in the nature of a mortgage foreclosure, inconsistent with this view. Section 9386 makes no provision as to the nature of the title acquired by the purchaser at such foreclosure sale; and, in the absence of such a provision, manifestly the title acquired follows the rank of the foreclosed lien, just as would be the case in the foreclosure of a mortgage. But by § 9388, it clearly

appears that it was not the legislative intent that a sale for any local assessment or installment thereof should affect or impair the lien of any other local assessment or installment; because it is specifically provided that, if a sale is made on foreclosure for one installment, that shall not bar foreclosure upon the same property thereafter for future installments. Hence the only portion of an assessment wiped out by a foreclosure is that portion of the assessment for which the foreclosure is made.

It seems manifest from a consideration of the entire act that the legislature intended to place all special assessments upon a parity. Therefore, the proposed action of the city in prorating the fund here in question was the action contemplated by the statute, and the judgment of the trial court was right, and must be and is hereby affirmed.

HOLCOMB, MAIN, ASKREN, and FULLERTON, JJ., concur.

MACKINTOSH, J. (dissenting)—The majority opinion is correct in holding that local assessment liens do not rank as do general taxes in inverse order to the date of their levy, and in overruling the case of *Seattle v. Everett,* 125 Wash. 39, 215 Pac. 337, in so far as it holds to the contrary. But I am unable to agree with the majority opinion in holding that the *pro rata* rule should apply to local assessment liens. As I read it, the language contained in § 9372, Rem. Comp. Stat., that every such assessment lien "shall be paramount and superior to any other lien or encumbrance whatsoever, theretofore, or thereafter created except a lien for assessments for general taxes" is simply meaningless. To say that liens created at different times are superior to other liens theretofore or thereafter created, when the other liens are of the same kind and character, is to

attempt to do something that is manifestly impossible.
·. That being the situation, the priority of local assess-
ment liens should be determined according to the rule
which obtains in the absence of any statutory establish-
ment of priority, *viz.*, that liens take their precedence
in the order in which they are created, the first in time
being the first in right. This rule is fundamentally
sound, is applicable in all cases of liens except for
general taxes, and, to my mind, would work a beneficent·
result as applied to local assessment liens. For the
reason that the statute has established no rule as to
priority of these liens, I am convinced that the major-
ity opinion is in error in attempting to establish the rule
of priority, which rule is contrary to that generally
applicable to liens. I therefore dissent.

MITCHELL, J., concurs with MACKINTOSH, J.