## CENTRAL SAV. BANK & TRUST CO. v. TUCKER (T. L. JAMES & CO., Inc., Intervener).

### No. 4972.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

Hudson, Potts & Bernstein, of Monroe, for appellant.

McHenry, Lamkin & Lamkin, of Monroe, for appellee.

DREW, Judge.

The sole question involved in this case is as to the rank of two paving liens on one lot in the city of Monroe. There is no dispute with respect to the facts.

The lot in question is a corner one located at the intersection of Fifth street and L street in the city of Monroe, La. Fifth street was paved and the ordinances and assessments recorded on August 30, 1929. L street was paved and the necessary ordinances recorded on February 20, 1931. The plaintiff, Central Savings Bank & Trust Company, holds the paving certificates on L street, and intervener, T. L. James & Co., Inc., holds the paving certificates on Fifth street. Both liens arise under Act No. 27 of 1915, Ex. Sess., as amended.

Defendant in the case made no appearance, and judgment was rendered in favor of plaintiff and intervener, and against defendant by default, and the respective liens were held to be of equal rank by the lower court. From this judgment, an appeal was perfected to this court, and, due to the fact that the question was res nova in this state and the decisions in other states most conflicting, we availed ourselves of the right conferred by section 25, article 7, of the Constitution of 1921, and submitted for instructions to the Supreme Court the following questions of law which arise out of this suit: (1) Whether the liens rank according to recordation; (2) whether the rule of inverse priority applies; and (3) whether they rank equally.

The instructions given us by the Supreme Court, 161 So. 759, with Chief Justice O'Niell as the organ of the court, are as follows:

"The Court of Appeal for the Second Circuit, under authority of section 25 of article 7 of the Constitution, has propounded the question, whether two paving liens affecting a corner lot are of equal rank, and, if not, which one of them is the superior lien, the fact being that the municipal ordinance levying the assessment for the paving of one of the adjacent streets was recorded at a date subsequent to the recording of the ordinance levying the assessment for the paving of the other adjacent street, each ordinance, however, being recorded within the time prescribed by the statute. Act No. 27 of 1915, Ex. Sess., § 4. The statute provides that a certified copy of the ordinance levying the

assessment for street improvement shall be filed within ten days for record in the office of the recorder of mortgages, and, when so filed and recorded, shall be a lien which 'shall prime all other claims except taxes.'

"This is the first case in which the question has arisen in Louisiana. It is said in the briefs filed by the attorneys in the case that in other jurisdictions the question has been answered three ways, some courts holding that the two liens rank in the order in which they were recorded, other courts holding that the two liens rank in the inverse order in which they were created, and other courts holding that the two liens are of equal rank, regardless of the order in which they were created or recorded, provided they were both recorded within the time prescribed by the statute on the subject.

"Two decisions are cited as if maintaining that the two liens, in a case like this, should rank in the order of registry; but these decisions do not refer to pavement liens. Both cases were decided by the Supreme Court of Iowa, viz., City of Charles City v. Ramsay, 199 Iowa, 722, 202 N. W. 499, and Anderson Deering Company v. City of Boone, 201 Iowa, 1129, 205 N. W. 984. In both cases the ruling was that, under the statute (Code Supp. 1913, § 816) declaring that the lien securing the payment of special sewer taxes should have precedence over other liens, except ordinary taxes, and under the statute (section 1989a45) declaring that drainage taxes should be a lien to the same extent as taxes levied for county and state purposes, the city's lien for the sewerage taxes was superior to the lien for the drainage taxes, because the lien for the sewerage taxes was perfected and recorded ahead of the drainage tax lien. The decisions were merely the court's interpretation of the two local statutes and are not at all appropriate to the question propounded by the Court of Appeal in this case.

"The rule that pavement liens in a case like this take rank in the inverse order of assessment is said to prevail in Indiana, Missouri, and California. The Indiana cases cited are Burke v. Lurkens, 12 Ind. App. 648, 40 N. E. 641, 54 Am. St. Rep. 539, decided by the Appellate Court of Indiana in 1895, and Brownell Improvement Co. v. Nixon, 48 Ind. App. 195, 92 N. E. 693, 695, 95 N. E. 585, decided by the same court in 1910. In Burke v. Lurkens, the statute (Acts 1889, c. 118, p. 240, § 3) declared that the pavement lien should 'have precedence over all other liens, excepting taxes,' and the court applied the

rule of precedence according to the inverse order of assessment of the pavement liens. But, in Brownell Improvement Co. v. Nixon, where the clause in the statute (Acts 1901, c. 231, p. 534) declared that the pavement assessment should be a lien 'to the same extent that taxes are a lien upon such property (section 6),' it was held that the pavement liens were of equal rank, regardless of the order of assessment or registry. The reason was given, thus:

" 'The reason for the rule denying priority in such cases is that the property was assessed upon the theory of benefits, and that every improvement of this character enhances the value of the property to the extent of such assessment. From this conclusion it follows that the property mentioned in this case was increased in value to the extent of the assessment for both improvements, and the security for the payment of liens growing out of one was augmented by the other. The conclusion reached is not unfair to the party making the last improvement, as he was charged with notice of the first improvement liens outstanding (City of Elkhart v. Wickwire, 121 Ind. 331, 22 N. E. 342), and ought not to be placed in a better position than he would have been had the first improvement not been made.'

"The Missouri cases cited are Jaicks v. Oppenheimer, 264 Mo. 693, 175 S. W. 972, decided by the Supreme Court of Missouri in 1915, and Redemeier v. Perkinson, 186 S. W. 1107, decided by the St. Louis Court of Appeals in 1916. That court, of course, merely adopted the ruling made by the Supreme Court in Jaicks v. Oppenheimer. Only three of the seven members of the court concurred in the opinion rendered in Jaicks v. Oppenheimer; another member concurred in the result; and three members dissented, one of them writing a dissenting opinion. The prevailing opinion in that case was founded upon the theory that liens securing special assessments for local improvements were of the same character and dignity as were tax liens securing the payment of general taxes. As to general taxes, of course, the collection of current revenue is of paramount importance, but that has nothing to do with special assessments for local improvements.

"In the California case cited, Woodill & Hulse Electric Co. v. Young, 180 Cal. 667, 182 P. 422, 424, 5 A. L. R. 1296, the court declared that the rule that tax liens should rank in the inverse order in which they were levied was applicable as well to pavement liens as to liens for general taxes. The decision was based upon four previous decisions by the

same court, having reference to general taxes, particularly Dougherty v. Henarie, 47 Cal. 9, 14, from which the court quoted, thus:

" 'The necessity of collecting revenue for the support of the government imperatively requires that the lien for taxes shall take precedence over all other liens, and that a tax sale, followed by a proper conveyance, shall transfer the title discharged of prior tax liens. If the rule were otherwise, purchasers at tax sales would be deterred from bidding, and a large portion of the revenue would remain uncollected.'

"Then the court, in Woodill & Hulse Electric Co. v. Young, declared that street assessment liens were governed by the same rule of precedence that governed general tax liens, for the reason that a street assessment was for a public purpose, and was a charge not against any person, as owner of the property or otherwise, but against the property itself. It does not impress us, however, that the analogy, to that extent, between general tax liens and street assessment liens, has much to do with the reason for the rule of precedence with regard to general tax liens, i. e. the necessity for collecting the current revenue for the support of the government.

"In Hollenbeck v. City of Seattle, 136 Wash. 508, 240 P. 916, 917, in 1925, the Supreme Court of Washington held that the rule that general tax liens took precedence in the inverse order of date was not applicable to local improvement assessments, and that the latter were of equal rank, regardless of the date of assessment or registry; and the court gave these sound reasons for its ruling:

" 'The rule of inverse priority is based upon the imperative necessity of collecting revenue for the support of the government. Annual levies are made for the purpose of providing funds for current expenditures, and a failure to collect current revenues might destroy the very government itself. Hence the rule is one of necessity, and should not be extended beyond what necessity requires. Moreover, special assessment liens are to be differentiated from general tax liens by the fact that the lien is created upon the theory that a corresponding benefit attaches to the property assessed, and the improvement is constructed upon the sole credit of the property benefitted. Either the contractor who performs the work takes the warrants and the bonds in payment therefor, or, if the security is passed to other investors, still they are purchasing upon the credit of the property especially benefitted, and a third interest, that of the bondholder, is injected. Manifestly,

there is no necessity for applying the inverse order rule, because governmental funds have not been expended, and the moneys to be collected go not to the government but to the private investor. The only investment is that of private parties, made on the faith and credit of the property benefitted, and good faith and good morals demand that these investors should have all of the security which the statute gives them. As recognized in Seattle v. Everett, supra, 125 Wash. 39, 215 P. 337, there is a conflict of authority upon this question. The terms of local statutes are more or less involved in many of the cases; but, without attempting to show just where the weight of authority lies, we, after a careful reconsideration, are impressed with the reasoning of those cases which hold against the inverse order rule, and under the terms of our statute, as hereinafter set forth, we are impressed with the thought that the Legislature intended all special assessments to be on an absolute equality. See Des Moines Brick Mfg. Co. v. Smith, 108 Iowa, 307, 79 N. W. 77; Scott-McClure Land Co. v. City of Portland, 62 Or. 462, 125 P. 276; Bell v. City of New York, 66 App. Div. 578, 73 N. Y. S. 298; Brownell Improvement Co. v. Nixon, 48 Ind. App. 195, 92 N. E. 693, 95 N. E. 585; Philadelphia v. Meager, 67 Pa. 345; also the note following Woodill & Hulse Electric Co. v. Young, 5 A. L. R. 1296, where all of the authorities, both pro and con, are collated and discussed.'

▆▆▆ "The best reasoning on this subject is in the decisions maintaining that liens arising from assessments for street improvement, in a case like this, are of equal rank, regardless of the relative dates of assessment or of registry of the liens. Mortgages, either conventional or judicial mortgages, take rank in the order in which they are recorded; but liens, unlike mortgages, are ranked in the order fixed by the statutes creating them. It is declared in article 3273 of the Civil Code that privileges (meaning liens) are valid against third persons from the date of the recording of the act, or evidence of indebtedness, as provided by law. That means merely that a lien shall not affect the rights of third persons unless it is recorded in the method provided by law. It does not mean that when two or more liens have been recorded as provided by law, they shall take rank in the order of date or time in which they were recorded.

▆▆▆ "Our interpretation of the expression in section 4 of Act No. 27 of 1915, that pavement liens 'shall prime all other claims ex-

cept taxes,' is that pavement liens shall not prime one another, according to date of registry, but shall be all of equal rank, subordinate only to the general tax lien. It is not often that one pavement lien comes in conflict with another pavement lien, because, as a general rule, the pavement affecting any one lot is all done under one ordinance. But, when, as in this case, two separate liens have arisen, respectively, from the paving at different times, of two streets adjacent to one and the same lot, the two liens are of equal rank. The reason for that is that both of the pavement liens are superior in rank to all other liens except the general tax lien, and hence neither of the pavement liens is inferior to the other.

"Our answer to the question propounded by the Court of Appeal, therefore, is that the two pavement liens are of equal rank."

It therefore follows that the judgment of the lower court is correct and is affirmed, with costs.