CITY OF CHARLES CITY, Appellee, v. ROBERT RAMSAY, County
Treasurer, et al., Appellants.

**TAXATION:** **Lien and Priority—Priority in Order of Perfection.** Taxes
1 other than general taxes have priority in the order in which they
are perfected as required by statute.

**APPEAL AND ERROR:** **Remand in Equity on Insufficient Record.** An
2 equity cause may, on appeal, be remanded in order to enable the
trial court to adjust unadjudicated issues.

**MANDAMUS:** **When Writ Lies—Application of Taxes.** Mandamus will
3 lie to compel a county treasurer to apply a special assessment tax
in favor of a municipality which has prior right thereto.  .

**Headnote 1:** 28 Cyc. p. 1202. **Headnote 2:** 4 C. J. p. 1201. **Headnote
3:** 38 C. J. p. 784 (Anno.)

*Appeal from Floyd District Court.*—JOSEPH J. CLARK, Judge.

MARCH 17, 1925.

ACTION to require the county treasurer to pay over to the
plaintiff certain moneys in his hands realized from a tax sale.
The district court granted the relief prayed, and defendants ap-
peal.—*Modified and affirmed.*

*Linnell, Larson & Carr* and *Jens Grothe,* County Attorney,
for appellants.

*R. W. Zastrow,* for appellee.

ALBERT, J.—I.  On the 7th of May, 1921, plaintiff, having
under contemplation the construction of a sewer in its city,
caused to be filed with the county auditor of Floyd County a
1. TAXATION: lien   certificate for a lien, as provided by Section
and priority:   816 of the Supplement to the Code, 1913.  On
priority in order
of perfection.   the 12th of May, 1921, the board of supervisors
of Floyd County levied a special tax for Drainage District No.
10 in said county, under Section 1989-a12 of the Supplement

to the Code, 1913. In due time, these levies reached the treasurer's office, and the treasurer of Floyd County, finding that neither the special nor the general taxes had been paid on the lots in controversy herein, sold the lots for all taxes then due, including general, drainage, sewer, and pavement taxes, amounting to about $527. On the two lots in controversy, $120 was bid, from which amount he deducted the general taxes, and refused to make distribution of the balance, amounting to about $88.86.

This action was originally instituted in equity by the city against the county treasurer, asking that the treasurer be required to apply the balance thus in his hands on the special sewer assessment of the plaintiff, and for other and further equitable relief. Later, the board of supervisors of Floyd County and Drainage District No. 10 were made parties defendant, and the prayer was amended by asking that the sewer assessment taxes be decreed prior and superior to the lien of Drainage' District No. 10, and asking a mandamus directing the county treasurer to apply the aforesaid balance on the special sewer assessment. The drainage district and the board of supervisors answered, claiming that the lien for the drainage assessment was superior to the lien for the sewer assessment.

Some question is raised as to the regularity of the sewer assessment, and that will be given attention as need be, later in the opinion.

The question of priority of these different special taxes must be determined under the different statutes controlling the same. Section 816 of the Supplement of 1913, referring to sewer assessments, provides that:

"After a contract has been made by any city for the making or reconstruction of any * * * sewer, the clerk shall file with the auditor of the county * * * in which said city is situated, a written or printed copy of the notice of the resolution provided for, with a true copy of the proof of publication thereof, together with a certificate of the clerk that an ordinance or resolution has been adopted directing the making * * * of said * * * sewer. Thereupon all special taxes for the costs thereof * * * which are to be assessed and levied against real property * * * together with all interest and penalties on all of said assessments, shall

become and remain a lien on such property from the date of the filing of said papers with the county auditor until paid, and shall have precedence over all other liens except ordinary taxes, * * *.''

The section of the county drainage law which has to do with this matter is Section 1989-a45 of the Supplement to the Code, 1913, which reads as follows:·

''The tax provided for in this act, when levied, shall be a lien upon all premises upon which the same is assessed to the same extent and in the same manner as taxes levied for county and state purposes.''

We are, therefore, squarely faced with the question of determining, under these sections of the statute, which of these liens had priority. If we depend wholly upon the wording of the statute, it would seem that the lien of the city for sewerage purposes was prior, because the statute specifically says that ·such taxes shall have precedence over all other liens except ordinary taxes; while the aforesaid Section 1989-a45 provides that the ditch taxes shall be a lien to the same extent and in the same manner as taxes levied for county and state purposes. Under this last named section, we had occasion to put construction on the wording therein in the case of *Fitchpatrick v. Botheras,* 150 Iowa 376, in which it was claimed that a prior existing mortgage was superior to the ditch tax; but we held, in substance, that, under this section of the Code just referred to, a ditch tax took precedence over the mortgage. This would rather lead to the conclusion that too much dependence cannot be placed upon the difference in the wording of these two sections. Assuming, therefore, for the purpose of argument, that, while differently worded, under our interpretation they were of force and effect the same as though worded identically, we then have two sections of the statute providing for different species of taxes, each given precedence over other liens, except general taxes. Thus viewing the statute, we had this identical question before us in the case of *Des Moines Brick Mfg. Co. v. Smith,* 108 Iowa 307, and we there held that, under such circumstances, the maxim of ''first in time, first in right,'' applies. In other words, as between two conflicting claims, like these at bar, the lien first perfected will have the superior right; and we

have no disposition at present to recede from the position taken in that case. We are quite well aware that the cases are hopelessly divided on this proposition outside of our own state, and very logical reasons appear to be given for both lines of authority. Yet, having committed ourselves to the ruling above specified, we adhere to the same. We there said:

"There appears to be good reason, too, for so construing this act. It would be something unusual to say that the municipality might, by its own voluntary act, displace a lien which, under the law, it had given. We are asked now to hold that, after the city, through its acts, has given to one party a lien, it can, without his consent and against his will, displace, and perhaps destroy it, by creating another lien in favor of some other person. This right may be conferred by statute; but it should be done in unmistakable language, before we would feel justified in so holding. Such a provision, too, would have a tendency to defeat the whole purpose of the statute. It is safe to say that contractors would hesitate to accept these certificates, if they knew the city had power at any time to destroy the lien by which their payment is secured. It may be thought, as counsel in substance asserts, that the benefit to the property of the later improvement would add to the security of the earlier lien, and make it as safe in second place as it was originally in the first. It is hardly necessary to say that the immediate benefit to property, from improvements of this kind, is in many instances more fanciful than real. In the present case, the cost of the improvement seems to exceed the value of the property after the work is done. The property owner is not without reason if, under such circumstances, he regards the improvement as a burden, rather than a benefit. It can hardly be said in any case that the real estate at once takes on an additional value equal to the cost of the improvement. But, however this may be, if the paving benefited the real estate in question by increasing its price, there is quite as much justice in compelling plaintiff to rely upon this for his security, as for holding that such fact will support the right to displace the lien of the intervener."

This reasoning is decisive of the question before us, and under it the city's claim for priority is sustained, subject to the

exceptions hereinafter marked out. A quite exhaustive note on this subject will be found in 5 A. L. R. 1301.

II. It appears that the property in controversy herein, Lots 11 and 12, each bore an assessment for general taxes, and also an assessment for ditch taxes; but as to the sewer tax, it rested wholly on Lot 12. The county treasurer, in advertising these lots, advertised them with all of these various taxes against both lots; and when he sold the same, he received and accepted a bid for $120 for both of these lots under the tax sale. It is apparent, therefore, that, as to Lot 11, the city had no lien on the same, because no sewer assessment was returned against it. It of necessity follows that, as to the proceeds in the hands of the county treasurer realized from Lot 11, the city has no lien or interest therein, and as to that lot, the drainage tax will be exclusive; but, as the lots were sold *en masse,* and the bids were made *en masse,* there are no data before this court by which we can determine what portion of the $88 plus belongs to the city, and what portion belongs to the drainage district. The case will, therefore, be remanded to the district court, with power to take testimony for the determination of this question.

2. APPEAL AND ERROR: remand in equity on insufficient record.

III. Defendants quite seriously contend that there were certain irregularities in the proceedings of the plaintiff, leading up to the levying and spreading of the sewer tax. We have given this matter some attention, and find that, while there were some irregularities, none of them rise to the dignity of a lack of jurisdiction. More than this, the fund in the hands of the treasurer is a fund realized from the tax sale, having been a sale on the consolidation of all these various items of tax, the sale being *en masse,* and the bid corresponding. If the taxes on behalf of the city which are involved in this sale were held to be void, under the circumstances, we believe that the sale would, therefore, be void; and under such circumstances, if the sale were held to be void as a whole, the money in the hands of the treasurer, over which this contention is made, would not be available to either party.

The defendants further contend that mandamus is not the proper remedy herein. It will be noted that, in the original petition filed herein, no mandamus was asked, and that element

**3. MANDAMUS: when writ lies: application of taxes.** was brought in by way of amendment. Defendants insist that the county treasurer had a discretion in this matter, which cannot be regulated and controlled by a mandamus in court. This rule has been too often pronounced by this court to demand citation of authority; and if, under the facts in this case, the treasurer had any discretion, that discretion cannot be regulated by proceedings of mandamus. However, as we view the facts in this case, the county treasurer had but one duty: and that was to collect this tax, and on demand pay it to the party who was entitled thereto. This was wholly ministerial, and in no way savors of discretion. The fact, if it be a fact, that the county treasurer was unable to determine how it should be apportioned under the law, is wholly a law question, and does not thereby create a discretion in the county treasurer.

Some other questions are discussed which we do not deem of material importance to the disposition of this case.

Subject to the modification heretofore explained, the action of the district court is affirmed, and the case is remanded to the district court, as above suggested.—*Modified and affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.