## WILLARD, ET AL. v. MORTON

(No. 1943; June 9, 1936; 59 Pac. (2d) 338)

For the plaintiffs in error there was a brief by *Pershing, Nye, Bosworth* and *Dick* of Denver, Colorado, and *William B. Cobb* of Casper, Wyoming, and oral argument by *C. C. Dawson* of Denver, Colorado.

For the defendant in error, there was a brief by *Hagens & Wehrli* of Casper, and oral argument by *Mr. Wehrli.*

*Pershing, Nye, Bosworth & Dick* for plaintiff in error

RINER, Justice.

This cause comes to this court by proceedings in error to review a judgment of the district court of Natrona County in an action wherein E. J. Morton was plaintiff and E. W. Willard and Nebraska Bond and Mortgage Company, with other parties not involved here, were defendants. The separate general demurrers of the named defendants to the plaintiff's petition in said action were overruled, and inasmuch as they declined to plead further the judgment, of

which complaint is now made, was rendered against them.

The question presented for decision is one of law therefore, and arises upon the application of the provisions of Article 15 of Chapter 22 Revised Statutes of Wyoming, 1931, relating to local improvements in cities and towns in this state, to the following facts which appear in the record:

E. J. Morton, as the owner thereof, holds three bonds of Grading District No. 4 of the City of Casper, each bond having a par value of $500.00. This District was established pursuant to the local improvement law aforesaid on August 4, 1919, and the assessment roll for the improvement contemplated was confirmed by the Casper City Council on November 29, 1920, said roll being placed in the hands of the City Treasurer for collection on December 7, 1920. Consequently, by the terms of Section 22-1521, Wyoming Revised Statutes, 1931, the lien of the special assessments therein provided for became effective on the property assessed on the date last mentioned.

The defendant, E. W. Willard, is the owner of certain bonds of Paving Improvement District No. 38, and on February 21, 1930, he had obtained a judgment in the district court aforesaid, whereby the lien of the special improvement assessments in that Improvement District had been declared valid against certain properties in said judgment described and ordered foreclosed. This District also had been established under the local improvement law mentioned above. It had been created on June 18, 1923, its assessment roll had been confirmed by the City Council of the City of Casper May 19, 1924, and was thereafter delivered to the City Treasurer of said City for collection. Willard additionally held bonds in Paving District No. 48, and on October 15, 1929, he had obtained a judgment of

foreclosure of the lien of the special assessments for that District against the properties listed in said judgment. This District likewise had been created under the same law as District No. 38 aforesaid, on June 23, 1924, its assessment roll was confirmed by the Casper City Council December 4, 1924, and said roll had been thereafter transmitted to the City Treasurer for collection.

The defendant, Nebraska Bond and Mortgage Company, holds, as owner, certain bonds in Storm Sewer Improvement District No. 2, and on February 25, 1930, it, too, had obtained a judgment of foreclosure of the special assessments lien imposed in that District against certain properties named in the judgment. This District, like the others, had been established under the aforesaid local improvement law, its creation occurred on June 18, 1923, its assessment roll had been confirmed by the proper municipal authority July 21, 1924, and that roll thereafter delivered to the City Treasurer for collection.

The liens thus held by these two defendants were fastened upon certain properties affected also by the lien held by the plaintiff Morton, his lien, it will be observed, being prior in point of time to those of said defendants. His petition prayed that each of their liens be adjudged junior and inferior to the one held by him. The district court so decreed. The sole question for determination therefore, is the relative rank of the lien claims of these overlapping special assessments, all established, as has been indicated, under the provisions of Article 15 of Chapter 22 aforesaid. The solution of this question must necessarily be found in the terms of the law just mentioned, as all these liens exist only by virtue thereof.

This law, governing local improvements in cities and towns of this state, first became effective through

Chapter 120 of the 1915 Session Laws of Wyoming, which received Executive approval February 27, 1915. It was carried forward so as to be included as most of Chapter 129, Wyoming Compiled Statutes, 1920, and it now appears in the Wyoming Revised Statutes, 1931, as Article 15 of Chapter 22. Some of its provisions, particularly those relating to the issuance of bonds, have been placed in Article 16 of Chapter 22 of the Revised Statutes of 1931. Certain sections in Article 15, aforesaid, would appear to shed a great deal of light upon the problem before us.

An examination of the phraseology of the law as an entirety, and these sections in particular, makes it plain that both in language and structure these portions of the enactment which especially affect the matter in hand have been in a large measure borrowed from Chapter 98 of the Session Laws of the State of Washington for 1911, which, with certain changes, was subsequently embodied in Chapter XXII of 3 Rem. Comp. Stat., 1922. Indeed, some of the sections in our law and those in the Washington statute are to all intents and purposes practically identical. Counsel for plaintiffs in error have themselves referred to the fact that Section 22-1521 W. R. S., 1931 (a rescript of Section 20, Chapter 120, Laws of Wyoming, 1915), closely resembles Section 9372 in Chapter XXII of the Washington statutory compilation cited above, said Section 22-1521, creating the lien of special assessments, for local improvements and reading:

"The charge on the respective lots, tracts, parcels of land and other property, for the purpose of special assessment, to pay the cost and expense, in whole or in part of any improvement authorized in this chapter, when assessed and the assessment roll confirmed by the legislative body of such city or town in the manner therein provided by ordinance, shall be a lien upon the property assessed from the time said assessment roll shall be placed in the hands of the officer, authorized

by law to collect such assessment. Such lien shall be paramount and superior to any other lien or incumbrance whatsoever, theretofore or thereafter created except a lien for assessments for general taxes."

Counsel, however, point out that the parallel section of the Washington law, as set out in Section 9372 Rem. Comp. Stat., 1922, in the last sentence thereof contains the word "or" instead of "for" immediately preceding the words "general taxes." That this is so we find from our library copy of the Washington compilation cited. It is asserted that a mistake occurred in the language borrowed by the Wyoming Legislature "because only with the use of the word 'or' as it appears in the Washington statute can any sense be given to this last sentence of the section." On the other hand, counsel for defendant in error, arguing that no mistake at all has occurred, maintain that "there is a fundamental difference between the Washington and Wyoming statutes because of the use of the word 'or' in the Washington statute and the substitution therefor of the word 'for' in the Wyoming statute."

However, it would seem that counsel for both parties have been misled by the language of the 1922 Rem. Comp. Stat. Section 20 of Chapter 98, Laws of Washington, 1911, the law apparently passed by the Legislature of that state, contains the word "for" in its last sentence, immediately preceding the words "general taxes," exactly as does the Wyoming law. Remington's 1915 Codes and Statutes of Washington, in Section 7892-20, also reads in its last sentence: "Said lien shall be paramount and superior to any other lien or encumbrance whatsoever, theretofore, or thereafter created except a lien for assessments for general taxes." This section, as does Section 9372 of the later Washington Compilation, refers to "L. '11, p. 452, § 20," evidently as the source thereof. Hence, it would seem evident that in this section the Wyoming law and the Washing-

ton law are identical in language. It is significant, too, that the Supreme Court of Washington when interpreting the section aforesaid, in the case of Hollenbeck v. City of Seattle, 136 Wash. 508, 240 Pac. 916, decided November 19, 1925, set out this section of the law verbatim in its opinion as that is issued in the official state report with the last sentence of the section reading as quoted last above.

The state of the law of the several jurisdictions of the American Union concerning the rank of liens for successive special assessments for local improvements in municipalities is thus succinctly indicated by 44 C. J. 807:

"In some jurisdictions it is a rule that, in the case of two or more assessment liens for different improvements, the latest in point of time is paramount, but in other jurisdictions this rule does not obtain, and it is held either that the liens are on a parity or that the earliest in point of time has precedence."

See also 25 R. C. L. 189, Section 102. The language of the particular statute involved would seem in some instances at least to be especially stressed by the cases involving questions of this character, and would, therefore, explain in some measure the reason for such diversity of views.

For example, in Kentucky, where the rule is applied "first in time, first in right," the Court of Appeals of that state, in Crumley, Jones & Crumley Co. v. Hermann, 249 Ky. 300, 60 S. W. (2d) 618, points out that in that jurisdiction the lien of a special assessment for local improvements "is bottomed upon the express assurance given him by the statute, that it should 'remain a lien until fully paid off, having a precedence over all other liens.' The first assessment lien, therefore, should be held to be such and preserved in full effect and force as a lien having precedence until paid." This

rule prevails also in Iowa, where substantially the same statutory requirement exists. See Des Moines Brick Manufacturing Co. v. Smith, 108 Iowa 307, 79 N. W. 77; City of Charles City v. Ramsay, 199 Iowa 722, 202 N. W. 499. The same is true of West Virginia, as appears in Herbert C. Heller & Co. v. Duncan, 110 W. Va. 628, 159 S. E. 52. In Texas where the law provided that the assessment should "be a first and prior lien on the property assessed, superior to all other liens and claims except state, county and city ad valorem taxes, and shall be a personal liability and charge against the said owners of the property assessed," (Acts 40th Legislature, 1927, 1st Called Session, C. 106, P. 489), in Powell v. City of Amarillo, Tex. Civ. App., 57 S. W. (2d) 233, the court held to a similar rule, although the writer of the opinion expresses the view, "that there should be no priority of liens under assessments for successive improvements, and that the better and more equitable rule would be to make them equal, and require the distribution of the proceeds of the sale of the property ratably between such lienholders."

It is suggested in support of these cases, which the defendant in error urges upon us, that since the later lienholders obtained their interests subsequent to the interests of those earlier in point of time, they are charged with knowledge of the existing rights of the latter, and consequently should take subject to those rights, and that no person purchasing bonds based upon a lien for special assessments would be able to ascertain what might be levied against the property in the future. However, it is not easy to see why the holder of the lien security should be accorded a better position than the owner of the assessed property, who must hold at all times subject to the future right of the municipality or state to tax or assess. Neither may the special benefit theory under which special assess-

ments are charged upon property be overlooked. Mc-Garvey v. Swan, 17 Wyo. 120, 153, 96 Pac. 697. For as stated by 25 R. C. L. 98, § 13, "the constitutional prohibition against taking private property for public use without compensation is only avoided when there is compensation by an equivalent of benefits." Additionally, and this we deem controlling, our local improvement statute in its several provisions does not have language like that appearing in the statutes of jurisdictions where the priority rule is applied, and affords through the language used a clearer insight as to just what the Legislature intended concerning the relative rank of assessment liens, as will presently appear.

Plaintiffs in error stress the rule applied in some jurisdictions, "last in time, first in right," which is, of course, the general tax rule of inverse priority. See Jaicks v. Oppenheimer, 264 Mo. 693, 175 S. W. 972; Woodill & Hulse Electric Co. v. Young, 180 Calif. 667, 182 Pac. 422, 5 A. L. R. 1296; Balaam v. Pacific States Savings & Loan Co., 219 Calif. 612, 28 Pac. (2d) 1053, reversing the judgment of the California District Court of Appeals in 15 P. (2d) 186; Conley v. Hawley, 2 Calif. (2d) 23, 38 P. (2d) 408; and by statute in Minnesota, Gould v. City of St. Paul, 120 Minn. 172, 139 N. W. 293; Midway Realty Company v. City of St. Paul, 124 Minn. 300, 145 N. W. 21.

Plaintiffs in error remind us that in McGarvey v. Swan, supra, this court declared that "special assessments are levied and apportioned as an exercise of the taxing power" and hence they should follow this general tax rule of inverse priority, but the conclusion thus drawn does not, it is evident, take into account the fundamental distinction between general taxes and special assessments, which also was recognized in McGarvey v. Swan, supra, the former being levied to

raise revenue solely for governmental purposes, and the latter to fix charges for local improvements on the property benefited thereby. Sullivan v. Blakesley, 35 Wyo. 73, 246 Pac. 918.

It must be evident from a study of the practical operation of either of these rules that they may result at times, when property values are rapidly fluctuating and falling to the severe detriment of one or more lienholders under special assessments for local improvements, who have invested their money in good faith in reliance upon the statute, the property involved, or both.

There remains to be considered the rule of parity and equality and the statutory language from which it is deduced in jurisdictions where that doctrine prevails.

In Minnesota it appears that a double situation exists as to liens of the character now under consideration. The statute made assessment liens of equal rank with general tax liens and thereunder, as has been said, the general tax rule of inverse priority has been held to prevail. Gould v. City of St. Paul, supra. However, as between liens arising in a single year no priority seems to be permitted, and the liens of that year rank equally, the court in the case last cited saying:

"It follows that, to give effect to the statute, it must be construed, as applying, when declaring the equal rank of assessment and general tax liens, to such as arise from taxes or assessments levied during a particular year. So that, while the two liens for a particular year are of equal rank, those arising during subsequent years, though as between the two concurrent, are paramount and superior to those attaching during preceding years, and must be paid by the prior lienholder to protect his rights."

Where the law provided that the assessment lien should "have precedence over all liens except taxes," in Citizens Trust and Savings Bank of South Bend v.

Fletcher American Company, 207 Ind. 328, 190 N. E. 868, 192 N. E. 451, it appeared that the lien of the local improvement bonds held by appellees attached to the property involved at a later date than the lien of bonds of similar character owned by appellant. Appellees had judgment below. Reversing this ruling, the Supreme Court of Indiana said:

"The meaning of the word 'all' is clear and easily understood. The language 'shall have precedence over all liens, except taxes,' does not mean all prior liens, or all subsequent liens, or all mortgage liens, or all liens, except taxes and subsequent improvement liens, or all liens, except taxes and prior improvement liens. If appellees' liens are to be given priority, the statute must be read as giving appellant's lien 'precedence over all liens, except taxes and subsequent improvement liens,' and if appellant is to be given preference, the statute must be treated as giving appellees' liens 'precedence over all liens, except taxes and prior improvement liens.' But we know of no rule of construction that will permit us to add qualifying or limiting words to this provision of the statute. The word 'all' must be construed as meaning all, without exception or reservation, and to cover other liens, except taxes only, both prior and subsequent. In other words, when the liens were created, the statute said to both appellant and appellees: 'No lien arising prior or subsequent to your lien will take precedence over you, except the lien of taxes.' It must follow, therefore, that since the lien of each takes precedence over all, except only the lien of taxes, no other exception can be created, and the court cannot say to either: 'Your lien has precedence over all liens, except taxes and one other lien.' The liens, therefore, each taking precedence over all, are equal, and neither may have precedence over the other."

This decision is reviewed in 48 Harvard Law Review 1028 in connection with other cases illustrating the several priority rules, and the conclusion is advanced that: "Since according priority to either lien is dis-

advantageous, the rule of prorata distribution suggested in the instant case seems sound."

In Arkansas a levee district holding a lien prior in time to that of a drainage district, asserted the right to foreclose and sell, free of any lien of the district last mentioned, under a statute of that state, which so far as material to the point under consideration read: "The court shall make an order for the sale of the lands free of incumbrances of the assessments of all other improvement districts that are subordinate to the lien that is foreclosed, but subject to subsequent installments of the assessments of benefits in the plaintiff district." It was held in such case in Board of Commissioners of McKinney Bayou Drainage District v. Board of Directors of Garland Levee District, 181 Ark. 898, 28 S. W. (2d) 721, that the levee district could legally sell the land free and clear of all accrued assessments payable to the Drainage District, but as to the remainder of the assessments, the rule of equality should govern, the court remarking that:

"There are holdings by some courts in other states that the improvement district first created has the prior lien, while in others it is held that the last created has the prior lien. But as we see it great confusion will result from either holding. No doubt the Legislature has the power to provide that the one or the other is prior, but until it has done so, in plain and unmistakable language, we do not feel that we should so hold. Furthermore, the view we now take is just and equitable. It is conceded that the levee district without the drainage district failed to accomplish the purpose of its creation. It is likewise true that the drainage district without the levee district would be practically useless. Each therefore is complementary to the other. It would therefore appear to be unfair and inequitable for either lien for taxes to be held to be prior to the other, except as indicated herein, unless the Legislature has made it so in plain and unmistakable language, and we do not think it has done so."

The ruling in this case was subsequently reaffirmed in Howe v. Long Prairie Levee District, 187 Ark. 725, 62 S. W. (2d) 10. It was followed in Rowekamp v. Mercantile-Commerce Bank & Trust Co., 72 Fed. (2d) (C. C. A. 8th Cir.) 852.

The Supreme Court of Louisiana quite recently had before it a certified question from an inferior appellate court, whether two paving liens charged upon a corner lot were of equal rank, and if that was not so, which was superior to the other, the municipal ordinance levying the assessment for the paving of one adjacent street having been recorded before that levying the assessment for the other street, each ordinance, however, being recorded within the statutory period. (Act No. 27 of 1915, Ex. Sess., § 4.) The law required a certified copy of the ordinance levying the street improvement assessment to be filed within ten days for record with the recorder of mortgages, and provided that when thus filed and recorded it should be a lien which "shall prime all other claims except taxes." The case is Central Sav. Bank & Trust Co. v. Tucker, 182 La. 289, 161 So. 759.

After reviewing decisions from the several jurisdictions where the before mentioned three rules concerning the relative rank of liens for assessments for local improvements have been announced, the court quotes at length from the case of Hollenbeck v. City of Seattle, supra, declares that the reasoning of that case is sound, and concludes its opinion thus:

"The best reasoning on this subject is in the decisions maintaining that liens arising from assessments for street improvement, in a case like this, are of equal rank, regardless of the relative dates of assessment or of registry of the liens. Mortgages, either conventional or judicial mortgages, take rank in the order in which they are recorded; but liens, unlike mortgages, are ranked in the order fixed by the statutes creating them.

It is declared in article 3273 of the Civil Code that privileges (meaning liens) are valid against third persons from the date of the recording of the act, or evidence of indebtedness, as provided by law. That means merely that a lien shall not affect the rights of third persons unless it is recorded in the method provided by law. It does not mean that when two or more liens have been recorded as provided by law they shall take rank in the order of date or time in which they were recorded.

"Our interpretation of the expression in section 4 of Act. No. 27 of 1915, that pavement liens 'shall prime all other claims except taxes,' is that pavement liens shall not prime one another, according to date of registry, but shall be all of equal rank, subordinate only to the general tax lien. It is not often that one pavement lien comes in conflict with another pavement lien, because, as a general rule, the pavement affecting any one lot is all done under one ordinance. But, when, as in this case, two separate liens have arisen, respectively, from the paving at different times, of two streets adjacent to one and the same lot, the two liens are of equal rank. The reason for that is that both of the pavement liens are superior in rank to all other liens except the general tax lien, and hence neither of the pavement liens is inferior to the other."

Recurring now to the law of this State on the subject in hand, we have already indicated that Section 22-1521, W. R. S., 1931, quoted above, creating the lien for special assessments, and Section 20 of Chapter 98, Laws of Washington, 1911, are identical in language. That section, with other pertinent portions of the law, was given especially careful consideration by the Supreme Court of Washington in Hollenbeck v. City of Seattle, supra, in view of the fact that an earlier decision, City of Seattle v. Everett, 125 Wash. 39, 215 Pac. 337, was urged upon the court as settling the law in that jurisdiction in favor of the inverse priority rule. The Hollenbeck case presented the following facts:

At a sale of certain property for general taxes, King County secured an amount in excess of the taxes due

and costs of the sale, which it paid over to the City of Seattle under Rem. Comp. Stat. 1922, § 9393—and it may be here noted that this section affords the pattern for Section 22-1540 W. R. S. 1931, carried forward from Section 39, Laws of 1915, Chapter 120—to discharge all local assessment liens against the property aforesaid. The sum thus paid over did not, however, equal in amount the total due on outstanding assessments upon the property, of which there were no less than six separate ones, and the city officials announced their intention to prorate the amount thus received among the holders of these various liens. The action was brought by the holder of a local improvement bond secured under the fifth in point of time of the six outstanding assessments, to enjoin the City from carrying into effect its plan of pro rata distribution. The result reached in the case was that the injunction should be refused and the City allowed to proceed with the distribution of the fund as proposed.

After referring to the two rules of inverse and chronological priority, the court pointed out that the question presented was one of "statutory construction only." Quoting the creative lien section hereinabove set out verbatim, the court analyzes it thus:

"On a first reading, one might think this section could be construed in favor of the priority rule. The language creating a lien upon the property assessed from the time the assessment-roll is placed in the hands of the officer authorized to collect favors such a construction, but the sentence immediately following, to the effect that the lien shall be paramount and superior to any other lien or encumbrance whatsoever, theretofore or thereafter created except a lien for general taxes, negatives the priority rule; since, manifestly, though the first assessment became a lien from the date of the assessment-roll, paramount and superior to all others, yet, likewise, each and all of the assessments subsequent in date, according to the language of the statute, became likewise such paramount

and superior liens; and to give effect to the whole section, it would seem that, as between special assessment liens, each is offset by the other, all are paramount and superior to all other liens except general taxes, but none is or can be paramount and superior to any other such special assessment."

The court then proceeds to demonstrate that certain phraseology in Sections 9384, 9385, 9386 and 9388 Rem. Comp. Stat. 1922, confirms the conclusion thus reached as to the effect of Section 20 of Chapter 98 in the Washington local improvement act of 1911. Just here it is proper to observe that so far as the language of these sections, relied upon by the Washington court, is concerned, the provisions embraced in Sections 22-1532, 22-1533, 22-1534, and 22-1535, W. R. S. 1931, are practically identical therewith. In this connection the reasoning of the court continues thus:

"This view is strengthened by a consideration of the remainder of the act. If the entire act of 1911 is carefully studied and analyzed it will be seen that, by § 9384, the city, having acquired property at a sale upon a delinquent assessment, cannot resell the same for the amount for which it acquired it with interest and costs, but must, in reselling it, add thereto 'all delinquent assessments and taxes that may stand against said property with accrued interest thereon, penalties, costs and other charges.' Such delinquent assessments are not classified or given priority one over the other, but all must be included alike, and the city is required to pay into the fund from the proceeds of such resale the amount for which the property was liable. So that the city is denied the right to realize any particular assessment as under a prior lien, but must realize all assessments in the event of such sale. By § 9385 it appears that the purchaser at any such sale, having paid enough to pay all delinquent assessments, still takes the property 'subject to the liens of general taxes and special assessments.' Therefore it is clear that, upon a resale of the property, a purchaser, having paid enough to cover the costs of sale, interest and penalties and all delinquent assessments, still gets title from the

city subject to the assessments which are not delinquent. Hence the legislature seems to have contemplated equality of right and equality of lien between the several assessments, and no priority to any.

"The same legislative intent and policy appears in the provision for redemption of the property by the owner. He must not only pay, in order to redeem, the amount for which the purchaser acquired the property, but all taxes, special assessments, interest, penalties and costs paid by the purchaser. And by a later provision in the latter part of the first paragraph of § 9385, providing that, if no redemption is made, the purchaser is entitled to a deed, it is required that such purchaser, in order to procure a deed, must pay, '* * * all delinquent taxes and special assessments thereon or installments thereof, and certificates of delinquency or other certificates issued for special or local assessments, whether the same were levied, assessed or issued prior or subsequent to the issuance of said certificates of sale.' and, having paid off every delinquent assessment, no matter when levied, and obtained a deed, it is still further provided by the last part of § 9385 that the title acquired by the purchaser is subject to all assessments for local improvements or installments thereof, not delinquent. Nor is there anything in §§ 9386 and 9388, providing for foreclosure by an action in the nature of a mortgage foreclosure, inconsistent with this view. Section 9386 makes no provision as to the nature of the title acquired by the purchaser at such foreclosure sale; and, in the absence of such a provision, manifestly the title acquired follows the rank of the foreclosed lien, just as would be the case in the foreclosure of a mortgage. But by § 9388, it clearly appears that it was not the legislative intent that a sale for any local assessment or installment thereof should affect or impair the lien of any other local assessment or installment; because it is specifically provided that, if a sale is made on foreclosure for one installment, that shall not bar foreclosure upon the same property thereafter for future installments. Hence the only portion of an assessment wiped out by a foreclosure is that portion of the assessment for which the foreclosure is made.

"It seems manifest from a consideration of the entire act that the legislature intended to place all special assessments upon a parity."

In addition to what was said in the opinion just reviewed, it may be observed further that Section 22-1539, W. R. S. 1931,—identical with Section 9392 Rem. Comp. Stat. 1922, except that immediately preceding the word "delinquency" in the Wyoming law, the Washington law contains the words "delinquent installments thereof and certificates of,"—provides that:

"The purchaser at any sale authorized in this chapter acquires a lien on the property so bid in by him for the amount paid by him at such sale as well as for all taxes and delinquent assessments, or delinquency, and all interest, penalties, costs and charges thereon whether levied previously or subsequently to such sale, and whether for state, county, city or town purposes, subsequently paid by him on such property."

Considering the practical application of this section, it would appear difficult to explain reasonably why the statute should grant a lien to the purchaser for amounts paid by him for other "delinquent assessments" if, applying either of the priority rules, such lien held by him upon foreclosure took the property as against all other assessment liens. In such case it would seem that a lien would be vested in the purchaser for money which there was not the slightest need for him to expend. Our conclusion accordingly is that the liens of special assessments for local improvements here involved must be regarded as of equal rank and treated accordingly.

We agree with the Supreme Court of Louisiana that the reasoning of the Hollenbeck case is sound. We think also it is decidedly and directly applicable to the question before us, because of the close patterning of our law after that of Washington, and that it will work substantial justice as between the holders of local im-

provement assessment liens, all of them being treated alike in any realization upon the property security established for their payment. Questions like that under consideration arise chiefly, of course, when the property as security for the liens is unable, for one reason or another, to supply the value necessary to meet them. In such case, sharing equally in the proceeds of the security is certainly equity. Such a situation demonstrates the urgent necessity for good business sense being employed by municipalities in initiating subsequent local improvements when the debt for a previous one still remains unliquidated and property values are not settled.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

KIMBALL, Ch. J., and BLUME, J., concur.