INTER-OCEAN REINSURANCE COMPANY, Appellant, v. BYRON DICKEY, County Auditor, et al., Appellees.

No. 43766.

NOVEMBER 24, 1936.

Donnelly, Lynch, Anderson & Lynch, and William M. Dallas, for appellant.

Edwin J. Stason, for appellees, C. F. Lytle and Lytle Investment Company.

KINTZINGER, J.—Plaintiff is the owner and holder of certain special assessment certificates issued against the property in question for a sewer improvement assessment in Ames, Iowa, levied in January, 1929.

The defendant, C. F. Lytle, is the owner and holder of special assessment paving certificates issued subsequently against the same property for a street improvement assessment subsequently levied. Both assessments were payable in ten equal installments, many of which are still unpaid.

At a scavenger's tax sale in January, 1935, the property in question was sold by the county treasurer to the defendant, Lytle Investment Company, for a small fractional part of the general taxes then due and delinquent thereon, under the provisions of section 7255 of the Code of 1931, and tax sale certificates were issued to the purchaser thereof.

On March 18, 1935, the tax sale certificates were, on payment of the amount due thereon, assigned to the defendant, C. F. Lytle, holder of the special assessment paving certificates, by paying to the county auditor the total amount due on the tax sale certificates, with a demand for an assignment of said tax sale certificates.

On August 5, 1935, the plaintiff, who was then the owner and holder of the special *sewer* assessment certificates, duly tendered to defendant, C. F. Lytle, and the county auditor of Story County, the amount for which the real estate in question had been sold to the defendant, Lytle Investment Company, at a scavenger's sale, with interest and penalties, and accompanied said payment with a written tender and demand for an assignment of the tax sale certificates. Said tender being refused, the plaintiff paid the total amount due on said tax sale certificates to the county auditor. The defendant, C. F. Lytle, retains the tax sale certificates, and refuses to assign to the plaintiff, unless and until the plaintiff pays to him or the county auditor the full amount due him on the paving assessment certificates held by him, in addition to the amounts paid to the county auditor as due on the tax sale certificates.

Upon such record the lower court denied the application for a peremptory order of mandamus, but without prejudice to plaintiff's right to maintain a proper action in equity to enforce its rights, and plaintiff appeals.

█ █ █ Appellant contends that the lien of the special assessment certificates issued for the sewer improvement is prior in right to the lien against the property created by the paving assessments and certificates. Appellant, therefore, contends that it is entitled to an order in mandamus requiring the defendant to assign to plaintiff the tax sale certificates in question under the provisions of section 6041 of the Code of 1931. Section 6041 provides that:

"Any holder of any special assessment certificate against a lot or parcel of ground, * * * which lot or parcel of ground has been sold for taxes, either general or special, shall be entitled to an assignment of any certificate of tax sale of said property for any general taxes or special taxes thereon, upon tender to the holder or to the county auditor of the amount to which the holder of the tax sale certificate would be entitled in case of redemption."

It is conceded by the record that the plaintiff is the owner and holder of the special assessment sewer certificates issued for the sewer improvement along the property in question, and against which special assessments were duly levied in January, 1929.

It is also conceded that the defendant, C. F. Lytle, is the owner and holder of the special assessment paving certificates subsequently issued for the *paving* improvement along the same property, and for the payment of which special assessments were also subsequently levied against said property.

The special assessments for the sewer improvement were levied prior to the assessments levied for the paving improvement, and proper notices of the levy of both sewer and paving assessments were duly certified and filed with the county auditor as required by statute, the certificates of the sewer assessments being filed first.

Section 6008 of the Code of 1931 provides that after the proper certification of the special assessments to the county auditor, "all special taxes for the cost thereof, or any part of said cost, which are to be assessed and levied against real property,

\* \* \* with all interest and penalties on all of said assessments, shall become and remain a lien on such property from the date of the filing of said papers with the county auditor until paid, and such liens shall have precedence over all other liens except ordinary taxes, and shall not be divested by any judicial sale.''

Under section 6041 the holder of any special assessment certificate is entitled to redeem from the holder of the general tax sale certificate.

I. As plaintiff and the defendant, C. F. Lytle, are both holders of special assessment certificates against the same property, and as the assessments for both improvements are liens against the same property (section 6008), the first question naturally arising is, Which holder has the prior right to an assignment of the general tax sale certificates? It is conceded that the special assessment certificates held by the plaintiff, being secured by the lien of the special assessments for the sewer improvement, are first in time, because that assessment was duly levied and certified to the county auditor first.

██ There is a well known maxim of equity to the effect that as between equal equities, the first in time shall prevail, and that the ''first in time shall be first in right''. Des Moines Brick Mfg. Co. v. Smith, 108 Iowa 307, 79 N. W. 77; City of Charles City v. Ramsay, 199 Iowa 722, 202 N. W. 499; Anderson-Deering Co. v. City of Boone, 201 Iowa 1129, 205 N. W. 984; Equitable Life Ins. Co. v. Read, 215 Iowa 700, 246 N. W. 779; Fergason v. Aitken, 220 Iowa 1154, 263 N. W. 850.

In Equitable Life Ins. Co. v. Read, 215 Iowa 700, 246 N. W. 779, there was a dispute upon the question as to the priority of rights to certain crops between the holder of the first and second mortgages. In that case this court said, loc. cit. 703:

''When the crops came into existence, the respective liens would attach at exactly the same time. In other words, one lien would not attach before the other. Their equities, therefore, were equal. The question, therefore, is: Which party is entitled to the crops for the season commencing March 1, 1932?

''It is a maxim of equity that as between equal equities, the first in order of time shall prevail. The only interest that either \* \* \* had in the crop \* \* \* to be planted for 1932 was a contract for a lien enforcible in equity, and, as neither can be held to attach before the other, their equities must be held to be equal.

"As to the application of the balance of the maxim, the contract for a lien of the Equitable arose on the date of the mortgage, to wit, April 6, 1928, and the contract for the lien of Oviatt arose on the date he filed petition for foreclosure * * * July 24, 1931; hence, the rights of the Equitable were first in order of time and must prevail. In other words, under the application of this maxim as to the rent for the year commencing March 1, 1932, the rights of the Equitable to the crops for that farm year are superior to the rights of Oviatt."

Likewise, in Des Moines Brick Mfg. Co. v. Smith, 108 Iowa 307, 79 N. W. 77, it was held that as between successive special assessments, the first in point of time should be first in right.

Of similar import is the case of City of Charles City v. Ramsay, 199 Iowa 722, loc. cit. 724, 202 N. W. 499, 500, in which this court said:

"We are, therefore, squarely faced with the question of determining, under these sections of the statute, which of these liens had priority. If we depend wholly upon the wording of the statute, it would seem that the lien * * * for sewerage purposes was prior, because the statute specifically says that such taxes shall have precedence over all other liens except ordinary taxes; while * * * Section 1989-a45 provides that the ditch taxes shall be a lien to the same extent and in the same manner as taxes levied for county and state purposes. Under this last named section, we had occasion to put construction on the wording therein in * * * Fitchpatrick v. Botheras, 150 Iowa 376, 130 N. W. 163, 37 L. R. A. (N. S.) 558, Ann. Cas. 1912D, 534, in which it was claimed that a prior existing mortgage was superior to the ditch tax; but we held, in substance, that, under this section of the Code * * *, a ditch tax took precedence over the mortgage. * * * Assuming * * * while differently worded, under our interpretation they were of force and effect the same as though worded identically, we then have two sections of the statute providing for different species of taxes, each given precedence over other liens, except general taxes. * * * We had this identical question before us in * * * Des Moines Brick Mfg. Co. v. Smith, 108 Iowa 307, 79 N. W. 77, and we there held that under such circumstances, the maxim of 'first in time, first in right,' applies. In other words, as between two conflicting claims, like these at bar, the lien first perfected will have the

superior right; and we have no disposition at present to recede from the position taken in that case.''

To the same effect is Anderson-Deering Co. v. City of Boone, 200 Iowa 1129, loc. cit. 1133, 205 N. W. 984, and Fergason v. Aitken, 220 Iowa 1154, 1157, 263 N. W. 850, 851.

Prior to the adoption of section 6041 of the Code, the lien of all special assessments was divested by the issuance of a tax deed for the sale of property for general taxes. This hardship was remedied by the enactment of section 6041 hereinabove set out, which enables the lienholders of special assessment certificates to secure an assignment of a general tax sale certificate by paying to the county auditor the amount required to redeem from the general taxes for which it was sold. There is no statutory provision, however, fixing priorities where more than one special assessment exists against the same property. .

We are constrained to hold that under the cases hereinabove cited as applied to the equitable maxim of ''first in time, first in right,'' the plaintiff, having a lien against the property which attached prior to that of the defendant, had a prior right to an assignment of the tax sale certificates. This contention is not seriously denied by appellee, who concedes that plaintiff has some rights, which can only be protected or preserved by an ordinary action in equity, but that an action in mandamus is not the proper remedy.

II. As shown by the preceding division of this opinion, the plaintiff is entitled to a prior right to have an assignment of the tax sale certificates upon a tender or payment to the holder of the tax sale certificates or to the county auditor, of the amount necessary to redeem therefrom. The record shows that plaintiff has not only tendered such amount to C. F. Lytle, the present holder of the tax sale certificates, but has also actually paid to the county auditor the amount necessary to redeem from such tax sale. Having made such tender and payment, the plaintiff, under the provisions of section 6041, is entitled to an assignment of said tax sale certificates. It has made a demand upon the defendant for such assignment, but its request therefor has been refused.

The statute provides that after making such a tender or payment, the holder of the special assessment certificates ''shall be entitled to an assignment of any *certificate of tax sale of*

*said property for any general taxes * * *,* upon tender to the holder or to the county auditor of the amount to which the holder of the tax sale certificate would be entitled in case of redemption.''

Having made such tender, and having paid to the county auditor the amount required by section 6041, the plaintiff is clearly entitled to receive an assignment of said tax sale certificates as hereinabove indicated. As these tax sale certificates are in the possession of the defendant, C. F. Lytle, and as they can only be assigned by him, as such owner and holder, this statute reasonably places an implied obligation and duty upon said holder to make the assignment required by section 6041.

■■■ Appellee contends, however, and the lower court found that notwithstanding plaintiff's right to receive an assignment of said tax sale certificates, the defendant Lytle cannot be compelled to make such assignment by an ''action in mandamus''.

Sec. 12440 of the Code of 1931 relating to the action in mandamus provides:

''The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or *person* to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station.''

Under section 6041, plaintiff, as owner of the special assessment certificates first issued, is entitled to an assignment of the tax sale certificates. If so, it necessarily follows that the assignment must be made by the person holding such tax sale certificates. It, therefore, necessarily follows that this statute, by necessary implication, places a duty upon the owner of such certificates to make the assignment. The performance of the act of assigning the tax sale certificates is, therefore, enjoined upon the defendant, C. F. Lytle, as the holder thereof.

This must be conceded from the record in this case, but appellee contends that this statutory duty enjoined upon the defendant Lytle, by necessary implication, is not a duty *''resulting from an office,* trust, or station.'' The statute requires both that a duty be imposed upon the defendant to make the assignment in question, and also that *such duty be one ''resulting from an office, trust, or station.''*

It may be conceded that the duty existing in this case does

not result from an office or trust, but appellant contends that the defendant Lytle does occupy a "station", under the facts in this case. If he does occupy a "station", as holder of the tax sale certificates, then the provisions of section 12440 apply.

This court has never specifically construed the words "resulting from an office, trust, or station", as used in section 12440, and appellee contends that because such construction has never been made, and because the necessity for a construction exists, the term is not clear and certain, but is ambiguous, and because it does not specifically provide that the holder of a tax sale certificate is included within the term "office, trust, or station", that the action in mandamus cannot apply.

It must be conceded, however, that if a duty is placed upon the defendant, *as holder of the tax sale certificates,* such duty is imposed because of his position as such holder. He is the holder of the tax sale certificates, and as such occupies a certain position or station, which is that of the *holder of the tax sale certificates,* and his duty to make the assignment demanded *is enjoined upon him as a duty "resulting from the position or station"* occupied by him, as holder of the tax sale certificates in question.

It is our conclusion that the term "station" as used in this statute is sufficiently broad and comprehensive to include the position or "station" occupied by the defendant Lytle *as holder of said tax sale certificates.* In other words, he stands in the same position as a stake-holder, and as such is reasonably obligated to make an assignment of the tax sale certificates if redemption thereof is made within the statutory period.

One of the definitions of the term "station" given in Webster's New International Dictionary (2d Ed.) is, "a place, position, dignity, rank; and to appoint or assign to a post, place, office, or the like."

When the defendant, C. F. Lytle, under his special assessment certificates, secured an assignment of the tax sale certificates from the Lytle Investment Company, he secured it by virtue of his position as *holder of special assessment certificates.* It was impossible for him to secure it in any other capacity. He occupied a peculiar position created by statute giving only to holders of special assessment certificates the special privileges of redeeming from a general tax sale. After the assignment to him, the defendant Lytle became the holder of the tax sale certificates.

As such holder, he was, by necessary implication, enjoined by section 6041 to make an assignment of said tax sale certificates to the holder of certificates of prior rights, upon tender or payment by plaintiff to him or the county auditor of the amount necessary to redeem the property in question from the tax sale certificates held by defendant. · This conclusion has support in the following cases: Keokuk v. Merriam, 44 Iowa 432; Boggs v. C. B. & Q. Ry., 54 Iowa 435, 6 N. W. 744; Swinney v. C. R. I. & P. Ry., 123 Iowa 219, 98 N. W. 635; Valentine v. Ind. School Dist., 187 Iowa 555, 174 N. W. 334, 6 A. L. R. 1525; Valentine v. Ind. School Dist., 191 Iowa 1100, 183 N. W. 434; People v. Cunningham, 6 Idaho 113, 53 Pac. 451; Industrial Comm. v. Daly Mining Co., 51 Utah 602, 172 Pac. 301; State v. Crawford, 103 Kan. 76, 173 Pac. 12; Foster v. Stewart, 113 Kan. 402, 214 Pac. 429.

In Valentine v. Ind. School Dist., 187 Iowa 555, 174 N. W. 334, 336, 6 A. L. R. 1525, this court held that mandamus was proper to compel the issuance of a diploma to a graduate of a public school, although no statute so provided. In that case this court said, loc. cit. 561:

"True, there is no statute expressly requiring the issuance of a diploma in such a case, but our schools are maintained by taxation, and our public schools are, in a sense, public, and * * * engaged in a public duty. And we think and hold that, even without a statute, there is an implied legal duty on the part of such officers to issue written evidence of graduation, in the form of a certificate, a diploma * * * to those who have satisfactorily completed the prescribed course."

In Valentine v. Ind. School Dist., 191 Iowa 1100, loc. cit. 1105, 183 N. W. 434, 437, this court said:

"The issuance of a diploma by the school board to a person who satisfactorily completes the prescribed course of study * * *, is mandatory; and, although such duty is not expressly enjoined upon the board by statute, it does arise by necessary and reasonable implication."

Likewise, in the case of Boggs v. C. B. & Q. Ry., 54 Iowa 435, loc. cit. 439, 6 N. W. 744, 746, this court said:

"Because of the *station* of the corporation, *as the possessor*

*of power and privileges, certain duties are by law imposed.* One of these duties imposed by law is that the defendant shall, when any person owns lands on both sides of its track, upon request, make one cattle guard and one causeway or other means of crossing the same, at such reasonable place as the owner may designate.''

Of similar import is Swinney v. C. R. I. & P. Ry., 123 Iowa 219, 98 N. W. 635.

In Boggs v. C. B. & Q. Ry., supra, the court held that the corporation assumes certain duties because of its ''station'' as a railroad corporation, and that the duties imposed upon it resulting from such ''station'' was the obligation imposed upon it by law to make cattle guards and crossing over private property.

Likewise in the case at bar, the defendant, C. F. Lytle, by reason of his position or ''station'', as holder of the tax sale certificates, was given by the laws of this state the special privilege of acquiring title to the real estate in question as an independent grant from the state, as the ''holder'' of the tax sale certificates. Such privilege, however, was accompanied by certain obligations and duties, which, by necessary and reasonable implication, required him to make an assignment of such tax sale certificates to the holder of other special assessment certificates having a prior right to his.

Appellee concedes that plaintiff has certain rights under its special assessment certificates, but that such rights cannot be secured in an action in mandamus, and that the only method in which its rights can be protected is by an action commenced in a general equity proceeding. Plaintiff's petition, however, contains all the allegations necessary to secure any relief to which it might be entitled in a general ''equitable proceeding'' in which a mandatory injunction or a writ of mandamus might be requested. The prayer of the petition, in addition to asking for an order of mandamus commanding the defendant to forthwith assign said tax sale certificates to the plaintiff, also asks that plaintiff be granted *all the relief prayed for in the petition, and* ''*such other, further and additional relief as to the court shall seem proper.*''

This action was docketed and tried as an equitable proceeding. The only difference between the petition and one simply filed as a general equity action is that it was entitled ''petition

in mandamus''. The action is entitled ''in equity'' in this court, and was tried as an ''equitable proceeding'' in the lower court. In our judgment it would be useless to send the plaintiff out of a court of equity through one door, and require it to enter the same court through another.

Anything said herein is not intended as in any manner relating to obligations entered into between private individuals, but is limited to the duties referred to herein.

For the reasons hereinabove· expressed, we are constrained to hold that plaintiff was entitled to the relief prayed for.

The judgment of the lower court is, therefore, hereby reversed, and the case is remanded for an opinion in harmony herewith.—Reversed and remanded.

PARSONS, C. J., and ALBERT, DONEGAN, HAMILTON, STIGER, and RICHARDS, JJ., concur.